**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FAYE STRAIN, as guardian of Thomas
Benjamin Pratt,

     Plaintiff - Appellant,

v.

VIC REGALADO, in his official capacity;
ARMOR CORRECTIONAL HEALTH
SERVICES, INC.; CURTIS MCELROY,
D.O.; PATRICIA DEANE, LPN; KATHY
LOEHR, LPC,

     Defendants - Appellees

and

BOARD OF COUNTY
COMMISSIONERS OF TULSA
COUNTY,

     Defendant.

No. 19-5071

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:18-CV-00583-TCK-FHM)**
_____

Robert Blakemore (Daniel Smolen with him on the brief), Smolen & Roytman,
Cincinnati, Ohio, for Plaintiff-Appellant Faye Strain.

Sean Snider (Micah B. Cartwright with him on the brief), Johnson Hanan Vosler
Hawthorne & Snider, Oklahoma City, Oklahoma, for Defendants-Appellees Armor
Correctional Health Services, Inc., Curtis McElroy, D.O., Patricia Deane, LPN, and
Kathy Loehr, LPC.

Guy Fortney (Katie Arnold with him on the brief), Brewster & De Angelis, Tulsa, Oklahoma, for Defendant-Appellee Vic Regalado.
_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs. Disagreement about course of treatment or mere negligence in administering treatment do not amount to a constitutional violation. Rather, to state a claim for deliberate indifference, a plaintiff must allege that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk. Indeed, the word deliberate makes a subjective component inherent in the claim.

Pretrial detainee Thomas Pratt exhibited alcohol withdrawal symptoms while in a county jail. Healthcare providers diagnosed and treated Mr. Pratt's symptoms, but their course of treatment proved ineffective. Plaintiff Faye Strain, as Mr. Pratt's guardian, sued. Although Plaintiff's alleged facts suggest that Defendants may have underestimated the extent of Mr. Pratt's symptoms, Plaintiff's allegations do not rise to the high level of deliberate indifference. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's dismissal of Plaintiff's federal claims, as well as its decision not to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

2

I.

Officials at the Tulsa County Jail (the Jail) booked Mr. Pratt into the Jail on December 11, 2015.[1]  The next morning, Mr. Pratt expressed that he was experiencing alcohol withdrawal and submitted a request for detox medication.  An Armor nurse conducted a drug and alcohol withdrawal assessment of Mr. Pratt that afternoon.  During the assessment, Mr. Pratt stated that he had habitually drank fifteen-to-twenty beers per day for the past decade.  Staff admitted Mr. Pratt to the Jail's medical unit, conducted a mental health assessment, and documented his withdrawal symptoms.

On December 13, Armor staff placed Mr. Pratt on seizure precautions, which dictated that staff check his vital signs every eight hours.  Armor staff also placed Mr. Pratt on Librium medication to treat his alcohol withdrawal symptoms at an undetermined time.  Around 2 a.m. on December 14, Nurse Patricia Deane conducted a withdrawal assessment, which revealed worsening symptoms.  Nurse Deane observed vomiting, severe tremors, acute panic states, and disorientation.  Plaintiff alleged that Mr. Pratt's symptoms showed he was suffering from delirium tremens.[2]

---

[1] The Tulsa County Sheriff's Office contracted with Defendant Armor Correctional Health Services (Armor) to provide medical and mental health services to inmates at the Jail.  The parties do not dispute that all individual healthcare professionals who interacted with Mr. Pratt were agents of Armor and thus state actors subject to the strictures of the Fourteenth Amendment.

[2] "According to the National Institutes of Health, delirium tremens is a severe form of alcohol withdrawal that involves sudden and severe mental or nervous system changes." Kindl v. City of Berkley, 798 F.3d 391, 397 (6th Cir. 2015) (internal quotation marks and citation omitted).

3

Despite the severity of Mr. Pratt's symptoms, and against an assessment tool's direction, Nurse Deane did not contact a physician. Nurse Deane also failed to check Mr. Pratt's vitals or perform any additional assessments.[3] But someone, presumably a nurse practitioner at the request of Nurse Deane, switched Mr. Pratt from Librium to Valium shortly after Nurse Deane's assessment.

About eight hours later, at 10:30 a.m. on December 14, Dr. Curtis McElroy examined Mr. Pratt. Dr. McElroy noticed a two-centimeter cut on Mr. Pratt's forehead and a pool of blood in his cell. Dr. McElroy, aware of Mr. Pratt's earlier symptoms from his medical records, observed Mr. Pratt's disoriented state, but did not send Mr. Pratt to the hospital or provide more care. Dr. McElroy recorded that Mr. Pratt received his first dose of Valium that morning. Another Armor nurse encountered Mr. Pratt later that afternoon and noted that he needed assistance with daily living activities. Again, Armor staff did not escalate Mr. Pratt's level or place of care.

The next morning, Kathy Loehr, a licensed professional counselor (LPC), conducted a mental health evaluation of Mr. Pratt. Mr. Pratt reported that he was detoxing from alcohol and appeared shaky. LPC Loehr observed that Mr. Pratt

---

[3] About ninety minutes later, another Armor staff member tried to check Mr. Pratt's vital signs but could not do so because he would not sit still. Armor staff did not record any vital signs for Mr. Pratt from December 14 until he left the Jail early on December 16.

struggled to answer questions and determined the cut on his forehead appeared unintentional. LPC Loehr declined to seek more care for Mr. Pratt.

That afternoon, Dr. McElroy again assessed Mr. Pratt and noted that he was underneath the sink in his cell with a cut on his forehead. Another Armor nurse observed Mr. Pratt around midnight on the morning of December 16, but he would not get up, so she did not check his vitals. Just before 1 a.m., a detention officer found Mr. Pratt lying motionless on his bed and called for a nurse. An Armor nurse responded immediately, initiated cardiopulmonary resuscitation, and called a medical emergency. First responders soon resuscitated Mr. Pratt and rushed him to a hospital. Mr. Pratt had suffered a cardiac arrest. The hospital later discharged Mr. Pratt with a seizure disorder and other ailments that left him permanently disabled.

Plaintiff Faye Strain, as guardian of Mr. Pratt, sued Armor, Nurse Deane, LPC Loehr, Dr. McElroy, and Tulsa County Sheriff Vic Regalado in his official capacity (collectively, Defendants) for Mr. Pratt's treatment at the Jail.

Plaintiff asserted claims for deliberate indifference to Mr. Pratt's serious medical needs under 42 U.S.C. § 1983 against all Defendants, as well as related state law claims. The district court dismissed all of Plaintiff's federal claims and declined to exercise supplemental jurisdiction over her state law claims. Plaintiff now appeals.

## II.

We review de novo the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Strauss v. Angie's List,

5

Inc., 951 F.3d 1263, 1266 (10th Cir. 2020).  To survive a Rule 12(b)(6) motion, Plaintiff's complaint must allege sufficient facts to state a claim for relief plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (explaining that a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

We review the district court's decision declining to exercise supplemental jurisdiction for an abuse of discretion.  Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1213 (10th Cir. 2006).

## III.

We consider whether the district court erred by dismissing Plaintiff's federal claims under a standard for deliberate indifference that included both an objective and a subjective component.  Plaintiff contends we should analyze her claims under a purely objective standard given the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. 389 (2015).  She also argues that the district court abused its discretion by declining to exercise supplemental jurisdiction over her related state law claims.  We reject Plaintiff's arguments and hold that deliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component, even after Kingsley.  We also conclude that Plaintiff failed to allege sufficient facts to support her deliberate indifference claims and that the district court did not err by declining to exercise supplemental jurisdiction over her remaining state law claims.

6

A.

The Supreme Court first recognized a § 1983 claim for deliberate indifference under the Eighth Amendment, which protects the rights of convicted prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976) (holding that deliberate indifference to a convicted prisoner's serious medical needs constitutes cruel and unusual punishment in violation of Eighth Amendment). We later granted pretrial detainees access to the claim under the Fourteenth Amendment. Garcia v. Salt Lake Cty., 768 F.2d 303, 307 (10th Cir. 1985) (holding that, although the Eighth Amendment protects the rights of convicted prisoners and the Fourteenth Amendment protects the rights of pretrial detainees, pretrial detainees are "entitled to the degree of protection against denial of medical attention which applies to convicted inmates"). And we apply the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim. Estate of Hocker by Hocker v. Walsh, 22 F.3d 995, 998 (10th Cir. 1994) (holding that a pretrial detainee's Fourteenth Amendment "claim for inadequate medical attention must be judged against the deliberate indifference to serious medical needs test of Estelle" (internal quotation marks and citation omitted)).

To state a cognizable claim, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." McBride v. Deer, 240 F.3d 1287, 1289 (10th Cir. 2001) (quoting Estelle, 429 U.S. at 106)). This standard includes both an objective component and a subjective component. Clark v. Colbert, 895 F.3d 1258, 1267 (10th Cir. 2018). To establish the

7

objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "A medical need is [objectively] serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Clark, 895 F.3d at 1267 (alteration in original and citation omitted). The subjective component requires Plaintiff to establish that a medical "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (alteration in original) (quoting Farmer, 511 U.S. at 837).

Plaintiff argues that the Supreme Court's Kingsley decision alters the standard for pretrial detainees' Fourteenth Amendment claims. In Kingsley, the Court held that a plaintiff may establish an excessive force claim under the Fourteenth Amendment based exclusively on objective evidence. Kingsley, 576 U.S. at 397 (explaining that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one"). But Kingsley did not address the standard for deliberate indifference to serious medical needs. And the circuits are split on whether Kingsley eliminated the subjective component of the deliberate indifference standard by extending to Fourteenth Amendment claims outside the excessive force

8

context.[4]  Although we have continued to apply a two-prong test, we have not yet

addressed Kingsley head-on.  See, e.g., Clark, 895 F.3d at 1269 (declining to address

whether Kingsley displaced our precedent regarding a pretrial detainee's deliberate

indifference claims).  We do so today.

We decline to extend Kingsley to Fourteenth Amendment deliberate

indifference claims for several reasons.  First, Kingsley turned on considerations

---

[4] The Fifth, Eighth, and Eleventh Circuits have declined to extend Kingsley to deliberate indifference claims.  Whitney v. City of St. Louis, 887 F.3d 857, 860 n.4 (8th Cir. 2018) (holding that "Kingsley does not control because it was an excessive force case, not a deliberate indifference case"); Dang ex rel. Dang v. Sheriff, Seminole Cty., 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (declining to apply Kingsley to a deliberate indifference claim because "Kingsley involved an excessive-force claim, not a claim of inadequate medical treatment due to deliberate indifference," so Kingsley "does not actually abrogate or directly conflict with our prior precedent" (internal quotation marks and citations omitted)); Alderson v. Concordia Par. Corr. Facility, 848 F.3d 415, 419 n.4 (5th Cir. 2017) (noting that "the Fifth Circuit has continued to . . . apply a subjective standard post-Kingsley").  Other courts, including the Third Circuit, have expressed doubts about the application of Kingsley, but declined to address the issue.  See Moore v. Luffey, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (unpublished) (acknowledging that the plaintiff did not cite any binding authority "applying Kingsley to a claim of deliberate indifference to a detainee's serious medical needs," but declining to address whether to apply a new standard in this case).

On the other hand, the Second, Seventh, and Ninth Circuits have extended Kingsley to the deliberate indifference context.  Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018) (concluding, "along with the Ninth and Second Circuits, that medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in Kingsley"); Gordon v. Cty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018) (relying on the "broad wording of Kingsley" to extend its holding to Fourteenth Amendment deliberate indifference claims); Darnell v. Pineiro, 849 F.3d 17, 34–35 (2d Cir. 2017) (overruling a case applying the subjective test to a deliberate indifference claim to apply a purely objective standard in the context of conditions of confinement claims; further "concluding that deliberate indifference should be defined objectively for a claim of a due process violation" (id. at 35)).

unique to excessive force claims: whether the use of force amounted to punishment, not on the status of the detainee. Next, the nature of a deliberate indifference claim infers a subjective component. Finally, principles of *stare decisis* weigh against overruling precedent to extend a Supreme Court holding to a new context or new category of claims.

First, we recognize that Kingsley involved an excessive force claim, not a deliberate indifference claim. By its own words, the Supreme Court decided that "an objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment"—nothing more, nothing less. Kingsley, 576 U.S. at 402. Although the Court did not foreclose the possibility of extending the purely objective standard to new contexts, the Court said nothing to suggest it intended to extend that standard to pretrial detainee claims generally or deliberate indifference claims specifically. Id. at 395 (explaining that the question before the Court "concerns the defendant's state of mind with respect to whether his use of force was 'excessive'" and concluding "*with respect to that question* that the relevant standard is objective not subjective" (emphasis added)). So whether Kingsley applies to Fourteenth Amendment claims outside the excessive force context is not readily apparent from that opinion.

Even though both causes of action arise under the Fourteenth Amendment, a pretrial detainee's cause of action for excessive force serves a different purpose than that for deliberate indifference. The excessive force cause of action "protects a pretrial detainee from the use of excessive force that amounts to punishment." Id. at

10

397 (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). The deliberate indifference cause of action does not relate to punishment, but rather safeguards a pretrial detainee's access to adequate medical care. Garcia, 768 F.2d at 307. Excessive force requires an affirmative act, while deliberate indifference often stems from inaction. Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc). Although "punitive intent may be inferred from affirmative acts that are excessive in relationship to a legitimate government objective, the mere failure to act does not raise the same inference." Id. at 1086 (Ikuta, J., dissenting) (reasoning that "the Kingsley standard is not applicable to cases where a government official fails to act" because "a person who unknowingly fails to act—even when such a failure is objectively unreasonable—is negligent at most" and "the Supreme Court has made clear that liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"). Because the two categories of claims protect different rights for different purposes, the claims require different state-of-mind inquiries.

Indeed, Kingsley relies on precedent specific to excessive force claims. The Court reasoned that the Due Process Clause is particularly concerned with improper punishment of pretrial detainees. Kingsley, 576 U.S. at 398 (citing Graham, 490 U.S. at 395 n.10 (concluding that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment")). And pretrial detainees should receive greater protection against excessive force than convicted criminals because the government lacks the same legitimate penological interest in

11

punishing those not yet convicted of a crime.  Id. at 398–99.  So a pretrial detainee may prevail on an excessive force claim "in the absence of an expressed intent to punish" if an official's actions "appear excessive in relation to [a legitimate government] purpose."  Id. at 398 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979) (considering only objective evidence to determine "whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word" (id. at 538))).  Throughout the Kingsley opinion, the Court's "focus on 'punishment'" provides the basis for removing the subjective requirement from a pretrial detainee's excessive force claims.  Id. (providing excessive force examples in which purely objective evidence showed that the government's punitive actions were intentional, even if the motivation behind those actions was not to punish).  But the Court has never suggested that we should remove the subjective component for claims addressing inaction.  Castro, 833 F.3d at 1086 (Ikuta, J., dissenting).  Thus, the force of Kingsley does not apply to the deliberate indifference context, where the claim generally involves inaction divorced from punishment.[5]

Next, we observe that a deliberate indifference claim presupposes a subjective component.  After all, deliberate means "intentional," "premeditated," or "fully

_____

[5] We also recognize a distinction between claims against medical professionals and law enforcement officers.  Rife v. Okla. Dep't of Pub. Safety, 854 F.3d 637, 647 (10th Cir. 2017) ("Our court applies specialized standards to deliberate indifference claims against medical professionals.").  Kingsley addressed claims against law enforcement officers, not medical providers, which further distinguishes this case.

considered." Black's Law Dictionary 539 (11th ed. 2019). And as an adjective, "deliberate" modifies the noun "indifference." Chicago Manual of Style § 5.79 (16th ed. 2010) ("An adjective that modifies a noun element usually precedes it."). So a plaintiff must allege that an actor possessed the requisite intent, together with objectively indifferent conduct, to state a claim for *deliberate* indifference.

To that end, the Supreme Court previously rejected a request to adopt a "purely objective test for deliberate indifference." Farmer, 511 U.S. at 839. Instead, deliberate indifference requires an official to subjectively disregard a known or obvious, serious medical need. Id. at 837 (explaining that "deliberate indifference [lies] somewhere between the poles of negligence at one end and purpose or knowledge at the other" (id. at 836)). So an official's intent matters not only as to what the official did (or failed to do), but also why the official did it. Id. at 839 (explaining that a deliberate indifference claim focuses "on what a defendant's mental attitude actually was").

An excessive force claim, on the other hand, does not consider an official's "state of mind with respect to the proper *interpretation* of the force." Kingsley, 567 U.S. at 396 (emphasis in original). So the Supreme Court distinguished deliberate indifference cases—where an official's subjective intent behind objectively indifferent conduct matters—from the distinct class of cases involving excessive force, which does not require that an official subjectively intended for force to be excessive. Farmer, 511 U.S. at 835 (explaining that the "application of the deliberate indifference standard is inappropriate in one class of prison cases: when officials

13

stand accused of using excessive physical force" (internal quotation marks and citation omitted)).  Removing the subjective component from deliberate indifference claims would thus erode the intent requirement inherent in the claim.  Id.; see also Kingsley, 576 U.S. at 408 (Scalia, J., dissenting) (warning that the Fourteenth Amendment's "Due Process Clause is not a font of tort law to be superimposed upon that state system" (internal quotation marks and citation omitted)).

Finally, the Supreme Court has cautioned against reaching the resolution that Plaintiff seeks.  Extending Kingsley to eliminate the subjective component of the deliberate indifference standard in the Tenth Circuit would contradict the Supreme Court's rejection of a purely objective test in Farmer and our longstanding precedent. Agostini v. Felton, 521 U.S. 203, 237 (1997) ("We reaffirm that if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (internal quotation marks, alterations, and citation omitted)).  Although other circuits have relied on the "broad language" of Kingsley to apply a purely objective standard to Fourteenth Amendment deliberate indifference claims, see supra note 4, we choose forbearance.  R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 386 n.5 (1992) ("It is of course contrary to all traditions of our jurisprudence to consider the law on this point conclusively resolved by broad language in cases where the issue was not presented or even envisioned.").

14

At no point did <u>Kingsley</u> pronounce its application to Fourteenth Amendment deliberate indifference claims or otherwise state that we should adopt a purely objective standard for such claims, so we cannot overrule our precedent on this issue. <u>United States v. White</u>, 782 F.3d 1118, 1126–27 (10th Cir. 2015) (holding that one "panel of this court cannot overrule the judgment of another panel absent en banc consideration or an intervening Supreme Court decision that is contrary to or invalidates our previous analysis" (citation omitted)).[6] We therefore join our sister circuits that have declined to extend <u>Kingsley</u> to deliberate indifference claims and will apply our two-prong test to Plaintiff's claims.

B.

We next consider whether Plaintiff stated a claim for deliberate indifference against any Defendant. Plaintiff contends that Defendants ignored obvious and substantial risks to Mr. Pratt's health as he experienced serious alcohol withdrawal-related symptoms, including delirium tremens. Defendants, on the other hand,

---

[6] Plaintiff also contends that we recently applied a purely objective test for the mistreatment of a pretrial detainee outside the excessive force context. <u>Colbruno v. Kessler</u>, 928 F.3d 1155, 1163 (10th Cir. 2019) (applying the <u>Kingsley</u> standard to claims against law enforcement officers who *punished* a pretrial detainee by publicly displaying his nude body through the public areas of a hospital). Even if not a classic excessive force case, <u>Colbruno</u> may otherwise be categorized as a conditions of confinement case. <u>Id.</u> at 1162 (reiterating that a "detainee may not be *punished* prior to an adjudication of guilt in accordance with due process of law" (quoting <u>Bell</u>, 441 U.S. at 535 (emphasis added)). And because that case dealt with the appropriateness of punishment, we saw fit to apply the <u>Kingsley</u> standard to the plaintiff's claims. <u>Id.</u> at 1163; <u>see also</u> <u>Kingsley</u>, 576 U.S. at 405 (Scalia, J., dissenting) (explaining that <u>Bell</u> endorsed this proposition "in the context of a challenge *to conditions of a confinement*" (emphasis in original)). In any event, <u>Colbruno</u> did not address deliberate indifference, so it does not influence our analysis in this case.

contend that Plaintiff alleged Mr. Pratt received, at worst, negligent care, which does not rise to the high level of deliberate indifference.  Perkins v. Kan. Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) (holding that the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation").

Here, we must determine whether Plaintiff alleged facts supporting the notion that Mr. Pratt's condition of delirium tremens was so obvious that any Defendant should have recognized it and escalated the course of treatment accordingly.[7] Although Plaintiff alleged that Mr. Pratt's symptoms provided an "obvious" indication of delirium tremens, that allegation is conclusory. Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (explaining that "in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable").  Rather, Plaintiff's factual allegations suggest that Defendants diagnosed Mr. Pratt with a less severe case of alcohol withdrawal and at least attempted to treat Mr. Pratt's symptoms. See Quintana v. Santa Fe Cty. Bd. of Comm'rs, No. 19-2039, 2020 WL 5087899, at *4 (10th Cir. Aug. 28, 2020) (concluding that "characteristics common to many intoxicated individuals," including frequent vomiting, "do not present an obvious

---

[7] Defendants do not contest whether Mr. Pratt's condition created an objectively serious medical need, but focus their arguments on the subjective component of Plaintiff's deliberate indifference claims.  See Thompson v. Upshur Cty., 245 F.3d 447, 457 (5th Cir. 2001) (stating that "delirium tremens is a serious medical need").

16

risk" (internal quotation marks, alterations, and citation omitted)). To be sure, whether Mr. Pratt received some care does not foreclose the possibility of a deliberate indifference claim, Oxendine v. Kaplan, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001), but an individual "who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Perkins, 165 F.3d at 811.

To begin with, Armor staff admitted Mr. Pratt to the Jail's medical unit the day he complained of alcohol withdrawal symptoms. Staff also conducted multiple assessments of Mr. Pratt that same day and continued to assess Mr. Pratt throughout his stay in the medical unit. Although Armor policy dictated that staff should check Mr. Pratt's vitals every eight hours, Plaintiff alleges that staff repeatedly failed to check his vitals and delayed providing heightened care. Mata, 427 F.3d at 757 (acknowledging that a failure to follow policy may "provide circumstantial evidence that a prison health care gatekeeper knew of a substantial risk of serious harm," but "published requirements for health care do not create constitutional rights"); see also Collins v. Al-Shami, 851 F.3d 727, 731–32 (7th Cir. 2017) (holding that a jail doctor was not deliberately indifferent for failing to monitor a detainee's vitals for signs of delirium tremens, in violation of policy, because healthcare providers can rely on "more qualitative indicators of acute withdrawal").

But Plaintiff failed to allege what other treatment Defendants should have provided or how transferring Mr. Pratt to a hospital would have produced a better outcome. Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 672 (7th Cir. 2012) (holding that jail officials were not deliberately indifferent by seeking to treat a detainee

17

in-house because nothing "suggests that the result necessarily would have been different had the care been provided at a private facility"). By Plaintiff's own allegations, Defendants provided several physical and mental health assessments to Mr. Pratt, placed him on two forms of medication, and kept him under routine observation. These allegations do not evidence deliberate indifference.[8]

As to Nurse Deane, Plaintiff's allegations are limited to her withdrawal assessment of Mr. Pratt around 2 a.m. on December 14. In her briefing, Plaintiff addresses her claim against Nurse Deane in a single, conclusory paragraph that fails to expressly apply the subjective component standard. Specifically, Plaintiff does not explain how the complaint alleges Nurse Deane's subjective awareness of serious medical needs. We therefore conclude that Plaintiff waived this argument and uphold the

---

[8] We also observe that Plaintiff only provided specific arguments about the named, individual Defendants in the argument section of her brief. Becker v. Kroll, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (explaining that an "issue or argument insufficiently raised in the opening brief is deemed waived" (citing Fed. R. App. P. 28(a)(9)(A)). To the extent that Plaintiff sought to maintain a deliberate indifference claim against Armor for the actions of other staff members, we conclude that the district court properly dismissed any such claims.

Although Plaintiff alleged that Armor staff failed to check Mr. Pratt's vitals on different occasions, those allegations did not amount to deliberate indifference because Plaintiff did not allege facts showing that those staff members knew of and consciously disregarded Mr. Pratt's serious medical needs. See Williams v. Kelso, 201 F.3d 1060, 1065 (concluding that even if providers had instructions to check an inmate's vital signs every four-to-six hours, failure to do so does not constitute deliberate indifference without knowledge of a serious medical need). And Plaintiff chose not to address on appeal whether these failures constituted an unconstitutional policy or custom, so Plaintiff waived this issue. Becker, 494 F.3d at 913 n.6. Thus, without an individual claim against an Armor agent, Plaintiff failed to state a federal claim against Armor for the reasons we discuss in this section. See infra pp. 19–23.

18

district court's dismissal of Plaintiff's federal claim against Nurse Deane. See United States v. Walker, 918 F.3d 1134, 1151 (10th Cir. 2019) (explaining that the "briefing-waiver rule applies equally to arguments that are inadequately presented in an opening brief," such as those "presented only in a perfunctory manner" (internal quotation marks and citations omitted)); Burrell v. Armijo, 603 F.3d 825, 835 (10th Cir. 2010) (declining to address "issues nominally raised but inadequately briefed" (citation omitted)).

As to Dr. McElroy, Plaintiff alleged that he too failed to adequately treat Mr. Pratt's obvious symptoms of delirium tremens, beginning with his first assessment on December 14. Specifically, Plaintiff alleged that Dr. McElroy knew someone had found Mr. Pratt on the floor of his cell and observed a pool of blood on the floor, a cut on Mr. Pratt's forehead, vomiting, and disorientation. Even so, Dr. McElroy did not send Mr. Pratt to a hospital or provide more care. Dr. McElroy, however, determined that the two-centimeter cut on Mr. Pratt's forehead did not point to more serious medical needs and recorded that Mr. Pratt received his first dose of Valium that morning.

Plaintiff's contention that administering Valium was an inadequate treatment goes to the efficacy of treatment, not deliberate indifference. Compare Collins, 851 F.3d at 729–30 (determining that medical providers were not deliberately indifferent where a jail doctor thought a pretrial detainee was suffering from delirium tremens and treated him with Librium at the jail for ten days even though the detainee's condition did not improve), with Lancaster v. Monroe Cty., 116 F.3d 1419, 1425 (11th Cir. 1997)

19

(reasoning that "a total failure to obtain medical treatment for [a detainee] amounted to deliberate indifference" because jail staff, who had actual notice that a detainee had a history of seizures and "could go into delirium tremens" while in custody, failed to monitor him), overruled on other grounds, Jacoby v. Thomas, No. 18-14541-C, 2019 WL 5697879, at *1 (11th Cir. Oct. 16, 2019). Plaintiff's assertion that Dr. McElroy should have sent Mr. Pratt to a hospital rather than attempt to treat him in-house likewise fails to evidence deliberate indifference. Murphy v. Wexford Health Sources Inc., 962 F.3d 911, 916–17 (7th Cir. 2020) (concluding that a provider's decision to deviate from the applicable standard of care by treating an inmate in the prison's healthcare unit rather than transfer him to "an appropriate hospital setting" suggests negligence rather than deliberate indifference). Even if Mr. Pratt required heightened treatment, Plaintiff again failed to allege that his symptoms were known or obvious to Dr. McElroy. Mata, 427 F.3d at 751 ("Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing.").

Our precedent is clear that "a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient under our case law to satisfy the subjective component of a deliberate indifference claim." Self, 439 F.3d at 1234. We cannot "freely substitute [our] judgment" for Dr. McElroy's or otherwise second-guess his course of treatment with the benefit of hindsight. Redmond v. Crowther, 882 F.3d 927, 938 (10th Cir. 2018) (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)); see also Graham, 490 U.S. at 396 (explaining that courts do not judge the

20

constitutionality of particular actions "with the 20/20 vision of hindsight"). Although Plaintiff disagreed with Dr. McElroy's course of treatment, her factual allegations did not establish deliberate indifference. Johnson v. Leonard, 929 F.3d 569, 576 (8th Cir. 2019) (reasoning that a "mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation" (citation omitted)); see also Quintana, 2020 WL 5087899, at *4. We thus conclude that the district court correctly dismissed Plaintiff's federal claim against Dr. McElroy.

As to LPC Loehr, Plaintiff's allegations are limited to her mental health evaluation of Mr. Pratt on the morning of December 15. Plaintiff alleged that LPC Loehr observed symptoms of delirium tremens and provided no care to address these symptoms. Specifically, Plaintiff alleged that LPC Loehr noticed Mr. Pratt struggled to answer questions and determined the cut on his forehead appeared unintentional. Based on her evaluation, LPC Loehr did not seek additional care for Mr. Pratt.

Again, Plaintiff questions LPC Loehr's professional judgment and the adequacy of her evaluation. See Duffield v. Jackson, 545 F.3d 1234, 1239 (10th Cir. 2008) (reasoning that an "allegation that [her] examination was cursory does not sufficiently allege deliberate indifference rather than mere medical malpractice"). But Plaintiff did not allege facts indicating that LPC Loehr—a counselor, not a medical doctor—knew or should have known that Mr. Pratt was suffering from delirium tremens and needed heightened care. See Clark, 895 F.3d at 1267. To the contrary, LPC Loehr determined that Mr. Pratt could answer at least some of her

21

questions and did not appear to be a danger to himself.  Cf. Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009) (recognizing "that a detainee lying face down, unresponsive and exhibiting symptoms of delirium tremens showed medical need sufficient for lay people to recognize he needed medical attention").  Thus, LPC Loehr's evaluation likewise failed to amount to deliberate indifference.  We therefore conclude that the district court correctly dismissed Plaintiff's federal claim against LPC Loehr.

As to Sheriff Regalado, Plaintiff's arguments are based wholly on the existence of an underlying constitutional violation by one of the named, individual Defendants.  We typically "will not hold a municipality liable for constitutional violations when there was no underlying constitutional violation by any of its officers."  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1317–18 (10th Cir. 2002) (internal quotation marks, brackets, and citation omitted).  Nor did Plaintiff allege a systemic failure, under which the combined actions of multiple officials could constitute a constitutional violation even if no one individual's actions were sufficient.  Garcia, 768 F.2d at 310.  And any alleged process failures at the Jail are not connected to alcohol withdrawal or a failure to treat Mr. Pratt's symptoms.  See Thompson v. Upshur Cty., 245 F.3d 447, 462 (5th Cir. 2001) (observing that "cases do not clearly establish that sheriffs must provide medical training on the dangers posed by [delirium tremens], only that they not have policies in place that preclude serious medical needs, like [delirium tremens], from being met").  Accordingly, we conclude that the district court correctly dismissed Plaintiff's federal claim against Sheriff Regalado.

22

Although Plaintiff's claims may smack of negligence, we conclude that they fail to rise to the high level of deliberate indifference against any Defendant. Thus, the district court correctly dismissed Plaintiff's federal claims in full.[9]

## C.

Finally, Plaintiff contends that the district court abused its discretion by declining to exercise supplemental jurisdiction over her related state law claims. The doctrine of supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Id.; see also 28 U.S.C. § 1367(c)(3) (permitting a district court to decline supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction"). As a result, the district court, upon dismissing Plaintiff's federal claims, did not abuse its discretion by declining to exercise supplemental jurisdiction over her state law claims.

AFFIRMED.

---

[9] Plaintiff also argues that the district court incorrectly applied a heightened pleading standard to her claims by finding that she did not "establish" the subjective prong of the deliberate indifference analysis. Plaintiff's argument appears to rest on the district court's application of the two-prong deliberate indifference test, instead of the purely objective test preferred by Plaintiff. We reject Plaintiff's argument advocating for a purely objective test, so we must also reject this argument. See supra Part III(A). Even if the district court did not use the most precise wording, the court's analysis made clear that it applied the appropriate Rule 12(b)(6) standard at the motion to dismiss stage.