**FILED**
**United States Court of Appeals**
**Tenth Circuit**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**July 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

NANCY RODRIGUEZ, in her personal
capacity and as personal representative of
the Estate of Jose Mena, deceased,

     Plaintiff - Appellant,

v.

CACHE COUNTY CORPORATION;
CACHE COUNTY SHERIFF'S OFFICE;
LOGAN CITY POLICE DEPARTMENT,

     Defendants - Appellees.

No. 21-4068
(D.C. No. 1:18-CV-00115-CW)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

While housed at Cache County Jail, Jose Mena committed suicide. His wife,

Nancy Rodriguez, in her individual capacity and as a representative of his estate,

brought 42 U.S.C. § 1983 claims against Cache County Corporation and Cache

County Sheriff's Office (collectively, "Cache County").[1] She alleges that Cache

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Ms. Rodriguez included no individual defendants in her First Amendment
Complaint ("FAC"). But she did also assert a state-law claim of "wrongful
death/negligence" against Cache County and the Logan City Police Department. FAC

County violated Mena's rights under the United States Constitution and alleges a separate claim based on the Utah Constitution.

Cache County moved for summary judgment. The district court granted its motion on all of Ms. Rodriguez's claims. Ms. Rodriguez now appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

On September 3, 2016, Mena was involved in a domestic dispute with Ms. Rodriguez. Their argument turned violent and eventually led a neighbor to call the police. Several officers from the Logan City Police Department responded and arrested Mena for multiple offenses, including domestic violence, assault, and child abuse.

The officers memorialized the details of the encounter in their written police reports. For example, Officer Cody Olsen's report included the contents of his interview of Ms. Rodriguez about the incident. During that interview, Ms. Rodriguez told Officer Olsen that Mena had physically struck her and her daughter and held various weapons—a razor, gun, and knife—during the dispute. Ms. Rodriguez told Officer Olsen that she was worried that Mena would hurt himself with these weapons.[2]

---

at 6. The district court dismissed this claim under Utah's Governmental Immunity Act. Ms. Rodriguez does not appeal the dismissal of this claim.

[2] Other officers documented in their reports that Ms. Rodriguez had told them that Mena had threatened to kill himself.

Officer Olsen and Officer Nathan Argyle then transported Mena to Cache County Jail.[3] There, Deputy Colton Peterson completed the initial-intake process. Cache County Jail policies state that its staff "should" communicate with the arresting and transporting officers.[4] Even so, the record is ambiguous about whether Deputy Peterson spoke with either Officer Olsen or Officer Argyle after they transported Mena to the jail. But the record is clear that "Deputy Peterson . . . was not informed that Ms. Rodriguez had represented to arresting officers that Mr. Mena was suicidal or that his mother had committed suicide." Appellant R. vol. 1 at 73.

As part of the intake process, Deputy Peterson asked Mena a list of questions, including some about his mental health. For example, Deputy Peterson asked Mena whether he was suicidal—to which Mena responded no. Jail policies also required Deputy Peterson to observe Mena's "behavior, condition, whether [he] appeared inebriated, and if [he] said anything that should be noted." Appellant R. vol. 1 at 72. Ultimately, Deputy Peterson did not identify any risk factors for self-destructive behavior.

After Mena completed the intake process, he was sent to booking. Cache County Jail has a policy advising that its booking officers "should" speak with the

---

[3] Though an investigation into Mena's suicide listed Officer Olsen and Officer Argyle as the officers who transported Mena to Cache County Jail, Officer Argyle does not recall transporting Mena. We will assume that Officer Olsen and Officer Argyle were the arresting and transporting officers.

[4] For example, one policy states: "Before the transporting officer has left the jail, booking deputies should ask the officers questions about the inmate's demeanor, attitude, and behavior prior to arriving at the jail." Appellant R. vol. 2 at 2.

transporting officers if they suspect the arrestee may have mental-health conditions or is at risk of self-destructive behavior.[5] But by the time Mena arrived at booking, the transporting officers had already left. So Mena's booking officer, Deputy Cody Atwood, completed the booking procedures without speaking to Officer Olsen or Officer Argyle.

During booking, jail policies required Deputy Atwood to ask Mena "questions related to suicide, mental health, and self-destructive behavior." Appellant R. vol. 1 at 75. In response to these questions, Mena told Deputy Atwood that he had never received mental-health counseling; that he had never experienced depression or mood swings; and that "he had never attempted suicide or self-mutilation." Appellant R. vol. 1 at 77. He also told Deputy Atwood that "he was not going to harm himself while incarcerated." *Id.* While speaking with Mena, Deputy Atwood observed that Mena appeared "fairly happy." *Id.* After completing the booking process, Mena was placed into the maximum-security section of the jail given the serious nature of his charges.

---

[5] For example, one policy states:

> If the booking deputy observes anything during the intake process which creates a suspicion that the arrestee may have mental problems or is a self-destructive behavior risk, questions should be directed to the peace officer or other person who brought the arrestee to the CCJ to determine the extent of the potential risk of self-destructive behavior by the arrestee.

Appellant R. vol. 2 at 10.

None of Cache County Jail's officers reviewed Officer Olsen's arrest report, or any other documents related to his arrest or charges. In fact, according to one Cache County Jail employee, Doyle Peck, the jail "discourage[s]" its officers from reading those documents because it may prevent them from "deal[ing] impartially with" an inmate. Appellant R. vol. 1 at 169.

On September 16, 2016, at Mena's request, he was moved from the jail's maximum-security section to general population. Four days later, on September 20, 2016—seventeen days after he arrived at Cache County Jail—Mena committed suicide by hanging himself inside his cell.

## DISCUSSION

### I.     Standard of Review

We review a grant of summary judgment de novo and apply the same legal standard that applies in the district court. *Jones v. Barnhart*, 349 F.3d 1260, 1265 (10th Cir. 2003). This means we view all facts in favor of the non-moving party and draw all reasonable inferences in her favor. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is evidence on both sides of the dispute that would allow a rational trier of fact to resolve the issue in either side's favor. *Lounds*, 812 F.3d at 1220. A fact is "material" if it is essential to a claim. *Id.*

## II.   Deliberate Indifference

When seeking to hold a municipality liable under § 1983, a plaintiff ordinarily must demonstrate an underlying constitutional violation by an individual municipal employee. *See Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020) ("We typically 'will not hold a municipality liable for constitutional violations when there was no underlying constitutional violation by any of its officers.'" (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002)); *see also Est. of Larsen v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008) ("A § 1983 suit against a municipality for the actions of its police officers requires proof that (1) an officer committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the constitutional deprivation that occurred. But without the predicate constitutional harm inflicted by an officer, no municipal liability exists." (internal citation omitted)); *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155–56 (10th Cir. 2001) ("[E]ven if it could be said that Tulsa's policies, training, and supervision were unconstitutional, the City cannot be held liable where, as here, the officers did not commit a constitutional violation."). Thus, Ms. Rodriguez's municipality claim hinges on her showing that an individual county actor violated Mena's constitutional rights.[6]

---

[6] If a plaintiff chooses to do so, he or she may attempt to show municipality liability "even in the absence of individual liability by any county actor" when "the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation." *See Crowson v. Washington Cnty.*, 983 F.3d 1166, 1185 (10th Cir. 2020) (citing *Garcia v. Salt Lake Cnty.*, 768 F.2d 303 (10th Cir. 1985)). Ms. Rodriguez has not advanced any such theory here or in the district court. And

Section 1983 claims based on a jail suicide are "treated as claims based on the failure of jail officials to provide medical care for those in their custody."[7] *Barrie v. Grand Cnty.*, 119 F.3d 862, 866 (10th Cir. 1997). These claims are "judged against the deliberate indifference to serious medical needs test." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (internal quotations and citation omitted).

To show deliberate indifference for summary-judgment purposes, a plaintiff must offer evidence that the individual actor "both [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference."[8] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, to demonstrate deliberate indifference, the plaintiff must

---

here, we will not do so for her. *See Est. of Burgaz v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1190 (10th Cir. 2022) (declining to consider whether the "combined actions of deputies can suffice for certain *Monell* claims" because the plaintiff failed to raise this argument); *see also Dodds v. Richardson*, 614 F.3d 1185, 1208 (10th Cir. 2010) (noting that we "should neither raise *sua sponte* an argument not advanced by a party either before the district court or on appeal, nor then advocate a particular position and resolve the appeal based on that advocacy" (citation omitted)).

[7] Ms. Rodriguez frames the underlying constitutional violation as the denial of the right to medical care under the Eighth and Fourteenth Amendments. But because Mena was a pretrial detainee at Cache County Jail, his constitutional right to adequate medical care arises under the Fourteenth Amendment. *See Strain*, 977 F.3d at 989 (explaining that the constitutional basis for a pretrial detainee's deliberate-indifference claim arises from the Fourteenth Amendment).

[8] The test for deliberate indifference also has an objective component. *See Strain*, 977 F.3d at 989. But we need not discuss this factor because, as we will explain, Ms. Rodriguez has failed to satisfy the subjective component.

show that the jail officer acted with the requisite state of mind—here, "actual knowledge . . . of an individual inmate's substantial risk of suicide." *Id.* at 1249.

Based on the summary-judgment materials, the district court found that "the County had no knowledge of Mr. Mena's risk of suicide and that nothing occurred during the approximately two weeks that Mr. Mena spent in [Cache County Jail] that indicated that he was suicidal." Appellant R. vol. 1 at 26. Reviewing de novo, we agree with this conclusion.

Ms. Rodriguez presented no evidence that any individual officer had "actual knowledge" of Mena's substantial risk of suicide. Indeed, Ms. Rodriguez admits that Cache County jail officers were never made aware of this risk. *See* Appellant R. vol. 1 at 73 (admitting that "Deputy Peterson . . . was not informed that Ms. Rodriguez had represented to arresting officers that Mr. Mena was suicidal or that his mother had committed suicide"); Appellant R. vol. 1 at 77 (admitting that "[n]o one informed Deputy Atwood that a member of Mr. Mena's family had told the arresting officers that he was suicidal"). Nor does she direct us to evidence that Mena's behavior at Cache County Jail would have alerted a jail officer that he presented a suicide risk. In fact, Ms. Rodriguez does not dispute that "[d]uring the intake process, Deputy Peterson did not identify any of the risk factors for self-destructive behavior." Appellant R. vol. 1 at 73. She also doesn't dispute that "Mr. Mena informed Deputy Atwood that he had not previously and was not at that time receiving mental health counseling; that he was not at that time, and had not previously experienced depression or mood swings; that he had never attempted suicide or self-mutilation;

8

and, that he was not going to harm himself while incarcerated." Appellant R. vol. 1 at 77.

Without that sort of evidence, Ms. Rodriguez's municipal-liability claim against Cache County must fail. This is because it is insufficient to merely allege that Cache County Jail maintained policies or customs of (1) not having its jail officers speak with the arresting or transporting officer on arrival at the jail, or (2) not having its jail officers review probable-cause statements, arrest reports, or other charging documents when there has been no showing that an individual jail officer deprived Mena of his constitutional rights. *See Strain*, 977 F.3d at 997 ("We typically will not hold a municipality liable for constitutional violations when there was no underlying constitutional violation by any of its officers." (internal quotations and citation omitted)); *see also Est. of Burgaz.*, 30 F.4th at 1186 ("An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not a constitutional violation.").

Finally, Ms. Rodriguez argues that the district court failed to resolve inferences and issues of material fact in her favor. But none of the inferences and issues bear on whether any individual officer acted with deliberate indifference and thus committed a constitutional violation. For example, Ms. Rodriguez argues that the court should have inferred that the arresting officers "did in fact convey Mr. Mena's risk of suicide." Opening Br. at 20. Yet, as just explained, she has already admitted that Deputy Peterson "was not informed that Ms. Rodriguez had represented

9

to arresting officers that Mr. Mena was suicidal or that his mother had committed suicide." Appellant R. vol. 1 at 73. And part of her claim turns on Cache County Jail maintaining a custom or policy of not having their intake deputies ask questions of arresting and transporting officers. Thus, there was no reason for the district court to infer that Deputy Peterson knew about Mena's suicide risk.

At bottom, Ms. Rodriguez fails to show that any individual jail officer had actual knowledge of Mena's substantial risk of suicide. Thus, she has failed to demonstrate any underlying constitutional violation by an individual defendant. So as a result, the district court correctly dismissed her municipality claim against Cache County.

## III.    Unnecessary Rigor Under the Utah Constitution

As we read her FAC, Ms. Rodriguez asserts a § 1983 claim based on an alleged violation of the Utah Constitution's Unnecessary-Rigor Clause. *See* FAC at 5. But a "[a] violation of state law cannot give rise to a claim under section 1983." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1164 (10th Cir. 2003). Thus, we note that the alleged violation of the Utah Constitution's Unnecessary-Rigor Clause cannot support Ms. Rodriguez's § 1983 claim.

But the parties and the district court approach the FAC as raising a standalone state-law claim based on the Utah Constitution, not as a predicate for liability under § 1983. So we do the same.

The Utah Constitution's Unnecessary-Rigor Clause states: "Persons arrested or imprisoned shall not be treated with unnecessary rigor." Utah Const. art. 1, § 9. The

10

clause "is focused on the circumstances and nature of the process and conditions of confinement." *State v. Houston*, 353 P.3d 55, 72 (Utah 2016) (citation omitted). Its aim is to protect prisoners from "unnecessary abuse." *Dexter v. Bosko*, 184 P.3d 592, 595 (Utah 2008) (quoting *Bott v. DeLand*, 922 P.2d 732, 737 (Utah 1996), *overruled in part on other grounds, Spackman v. Bd. of Educ.*, 16 P.3d 533 (Utah 2000)). "Abuse" in this context "focuses on 'needlessly harsh, degrading, or dehumanizing' treatment of prisoners." *Id.* (quoting *Bott*, 922 P.2d at 740). But the clause does not protect against "frustrations, inconveniences, and irritations that are common to prison life." *Id.* at 597 (quoting *Bott*, 922 P.2d at 741).

Ms. Rodriguez devotes little attention to this claim in her brief. Her argument effectively boils down to this: a jail suicide is not a "'frustration, inconvenience, and irritation' that should be 'common to prison life.'" Opening Br. at 21. But as the Utah Court of Appeals recently held, a prisoner's suicide need not equate with a showing of unnecessary rigor. *See Christensen v. Salt Lake Cnty.*, 510 P.3d 299, 310 (Utah Ct. App. 2022) (rejecting unnecessary-rigor claim based on jail suicide). Thus, Ms. Rodriguez has not established unnecessary rigor.

As a result, the district court correctly dismissed this claim.

**CONCLUSION**

For these reasons, we affirm.

Entered for the Court

Gregory A. Phillips
Circuit Judge