**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1116

_____

RICHARD HIGHTOWER,

Appellant

v.

CITY OF PHILADELPHIA; SERGEANT SHANTEL
MAJOR; CORRECTIONAL OFFICER JOHN DOES 1–10;
MEDICAL JOHN DOES 1–10

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-04075)
District Judge: Honorable Karen S. Marston

_____

Argued: December 2, 2024

Before: KRAUSE, BIBAS, and SCIRICA, *Circuit Judges*

(Filed: March 7, 2025)


Charles L. Becker         **[ARGUED]**
Colin Burke
Ruxandra M. Laidacker

Michelle Paznokas
KLINE & SPECTER
1525 Locust Street
19th Floor
Philadelphia, PA 19102
        *Counsel for Appellant*

Craig R. Gottlieb
Jennifer MacNaughton              **[ARGUED]**
CITY OF PHILADELPHIA
LAW DEPARTMENT
1515 Arch Street
Philadelphia, PA 19102
        *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

BIBAS, *Circuit Judge*.

Not every jail tragedy makes a municipality liable. Richard Hightower, a pretrial detainee, was brutally attacked by his cellmate and left paralyzed. So he sued the City of Philadelphia over its jail-housing policy. But cities are seldom liable for random, one-off attacks by one inmate against another. Because Hightower cannot show that the city caused any constitutional violation, the District Court properly granted it summary judgment.

2

## I. HIGHTOWER'S CELLMATE ATTACKED HIM, LEAVING HIM PARALYZED

Hightower was arrested and charged with burglary, theft, trespass, and receiving stolen property. He was held in a city jail pending trial. While new inmates are in intake, the jail tests, interviews, and medically examines them to classify them by security status. That process is supposed to be finished within three days. Then, the jail is supposed to assign the inmate to a permanent cell based on his classification.

Hightower was sent to an intake cell to await transfer to the general jail population. While he was there, the jail classified him as the second-lowest security risk (out of four classes).

Hightower's intake cellmate was Anthony Tyler. Tyler was classified as the highest security risk. This was not Tyler's first time behind bars. When he had been imprisoned before, he had screamed and kicked the walls, beaten his cellmate, fought other inmates, destroyed prison property, and slapped a guard. This time, he was arrested for aggravated and simple assault, attempted arson, and having a criminal instrument. Before joining Hightower in his cell, Tyler had been recovering from stab wounds in the jail's infirmary. Under the jail's policy, he should have gone from the infirmary straight to a permanent cell because he had already been classified and medically cleared. But a company that provides prison health services made a mistake, sending him back to an intake cell.

Tyler arrived in Hightower's cell angry. He started pacing the cell, kicking the door, and arguing with Hightower. He yelled at Hightower, saying he would "F" him up. App. 111–12. Hightower lay down on his bunk and stayed quiet. About

3

twenty minutes later, Tyler had a guard turn on the TV outside their cell. Hightower, trying to sleep, asked the guard to turn down the volume. Tyler again threatened to "F [Hightower] up." App. 113. Hightower responded that if Tyler was going to try anything, he should do it then. But the two stopped arguing, so Hightower lay down again and fell asleep.

The next day, while Hightower was lying in his bunk, Tyler started banging on the cell door. When a guard approached, Tyler complained that the cell was dirty and so was Hightower. Tyler demanded a new cell, but the guard said he could not be moved right away.

Tyler shot back: "If I can't get out of this cell, I'm going to kill my cellee." App. 170. "[H]e immediately turned around, ran, and pulled Mr. Hightower off the top bunk." App. 171. Once Hightower was on the ground, Tyler punched and kicked him. The guard radioed for medics and backup. Less than a minute after the guard got to the cell and before her backup arrived, she went in and pepper-sprayed Tyler, subduing him. Backup arrived shortly after, handcuffing Tyler and taking Hightower to the hospital. Even so, Hightower was left paralyzed.

Hightower sued the City of Philadelphia and the guards under 42 U.S.C. § 1983. The District Court granted summary judgment for defendants. Hightower does not appeal the court's judgment for the guard but does appeal the judgment for the city. We review de novo, taking all facts from and drawing all inferences for Hightower. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019).

4

## II. HIGHTOWER'S *MONELL* CLAIM FAILS

Hightower alleges that the city violated his constitutional rights by housing him with a dangerous inmate. To prove that *Monell* claim, he must show both that his rights were violated and that the city is liable for that violation. *See Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). The city is not vicariously liable for the unconstitutional conduct of its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, Hightower must show that the city's choices were the "moving force" behind the constitutional violation. *Id.* at 694.

Of course, Hightower has a Fourteenth Amendment right to "security from physical assault by fellow prisoners." *Davidson v. O'Lone*, 752 F.2d 817, 821 (3d Cir. 1984). Thus prisons have a duty to protect inmates from other inmates' violence. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A prison violates that duty if it (1) creates conditions that "pos[e] a substantial risk of serious harm" and (2) is deliberately indifferent "to inmate health or safety." *Id.* at 834. How this two-step test works for pretrial detainees' Fourteenth Amendment claims is not entirely clear in this circuit. Though the circuits agree that deliberate indifference refers to prison officials' subjective mental state under the Eighth Amendment, they differ on whether the Fourteenth Amendment standard is subjective or objective. *Compare, e.g.*, *Short v. Hartman*, 87 F.4th 593, 604–11 & n.9 (4th Cir. 2023) (collecting cases) (objective), *with Strain v. Regalado*, 977 F.3d 984, 989–93 (10th Cir. 2020) (subjective).

But we need not take sides here. Even if Hightower's right to security were violated, no reasonable jury could find the city responsible for Hightower's injuries. To show that the city was

5

the "moving force" behind the alleged injury, Hightower would have to show either that the city (1) had an unconstitutional policy or custom or (2) was deliberately indifferent to inmates' rights. *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019) (internal quotation marks omitted). He cannot show either.

## A. There was no unconstitutional policy or custom

Hightower says the city had a policy or custom of not separating inmates by security-risk level during intake. But he cannot identify any policy saying that. True, the city had a policy of separating *general population* inmates by security level. But it did not have any separation policy for inmates during intake. And the lack of a policy is not a policy. A policy requires "an official proclamation, policy or edict by a decisionmaker possessing final authority." *Id.* at 105. Plus, the city did have a different written intake policy that, if followed, would have prevented this attack; Tyler should have gone from the infirmary straight to the general jail population. But the city is not liable just because its employees did not follow this policy. *See Monell*, 436 U.S. at 691. Challenges to "failures and inadequacies by municipalities" must take the deliberate-indifference path, not the custom-or-policy path. *Forrest*, 930 F.3d at 105.

Nor has Hightower shown a custom that violated his right. Even if he could show that the city had a custom of commingling pretrial detainees that was "so persistent and widespread as to practically have the force of law," the custom would be facially constitutional because the Fourteenth Amendment does not require the city to reshuffle inmates in intake once they are classified. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). And the city's policy of separating *general*

6

*population* inmates by security classification does not, as Hightower suggests, make its practice of housing differently classified inmates together in intake for mere hours unconstitutional on its face. For a facial constitutional challenge, it would be too speculative to assume that higher-classification inmates inherently pose a substantial risk of harm to lower-classification ones while they are briefly comingled in intake. *Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012), *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).

### B. Nor has Hightower shown that the city acted with deliberate indifference

Hightower also argues that the city caused his alleged constitutional injury by failing to separate inmates in intake by classification status, a choice that was deliberately indifferent to inmates' rights. Under *Monell*, deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Ordinarily, this means that a plaintiff must show that "[a] pattern of similar constitutional violations" put the city on notice that, by failing to act, it was being deliberately indifferent to inmates' rights. *Connick*, 563 U.S. at 62.

Here, too, Hightower falls short. Though a deputy warden testified that other violent inmates in intake had attacked non-violent ones, she could not identify a single example. And Hightower's expert just rehashed equally empty deposition testimony. Though the expert opined that housing Hightower and Tyler together was like "mixing predator with prey," a lurid metaphor, he offered no factual support. Without that support,

we cannot say that his opinion could sustain a jury's verdict. *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). And at oral argument, counsel could not cite any other evidence of a pattern.

Hightower says the city can be liable even absent any pattern because Tyler's attack was such an obvious consequence of the city's failure to reshuffle inmates in intake after classification. But this single incident of a higher-classification inmate assaulting a lower-classification one is not enough to hold the city liable. True, the Supreme Court has "hypothesized" that "in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63 (internal quotation marks omitted). But it has never found this bar satisfied. And the only hypothetical example of this liability that it has recognized is extreme: if a city armed its police with guns and set them loose without any legal training on when to use them. *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989). Not even failing to train prosecutors on their *Brady* disclosure duties is enough. *Connick*, 563 U.S. at 64 (referring to *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

Thus, the risk to Hightower was not "so patently obvious" that the city can be held liable. *Id.* Failing to temporarily segregate inmates falls far short of giving police guns without training them on the law of deadly force.

\* \* \* \* \*

Hightower suffered greatly. But the city cannot be held liable. Because the city adopted a reasonable policy for handling inmates who are often violent and dangerous, we will affirm.

8