**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-1396**

───────────────

CHARLES WILLIS SHORT, individually and as Administrator of the Estate of Victoria Christine Short,

  Plaintiff - Appellant,

  v.

J. D. HARTMAN, Sheriff of Davie County, in his individual and official capacity; CAMERON SLOAN, Captain, Chief Jailer with the Davie County Sheriff's Department, in his individual and official capacity; DANA KELLY RECKTENWALD, Lieutenant, Operations Supervisor of the Detention Center with the Davie County Sheriff's Department, in her individual and official capacity; TERESA MORGAN, a/k/a Teresa M. Godbey, Sergeant, Jailer-Detention Officer with the Davie County Sheriff's Department, in her individual and official capacity; CRYSTAL COOK MEADOWS, Sergeant, Detention Officer with the Davie County Sheriff's Department, in her individual and official capacity; MATTHEW TRAVIS BOGER, Jailer-Detention Officer with the Davie County Sheriff's Department, in his individual and official capacity; JOHN OR JANE DOES 1-5, Jailers-Detention Officers with the Davie County Sheriff's Department, in their individual and official capacities; WESTERN SURETY COMPANY; ANDREW C. STOKES, Sheriff of Davie County, in his individual and official capacity,

  Defendants - Appellees.

---------------------------------------

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION; AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA; RIGHTS BEHIND BARS; RODERICK & SOLANGE MACARTHUR JUSTICE CENTER,

  Amici Supporting Appellant.

───────────────

---

**No. 21-1397**

---

CHARLES WILLIS SHORT, individually and as Administrator of the Estate of Victoria Christine Short,

        Plaintiff - Appellant,

    v.

J. D. HARTMAN, Sheriff of Davie County, in his individual and official capacity; CAMERON SLOAN, Captain, Chief Jailer with the Davie County Sheriff's Department, in his individual and official capacity; DANA KELLY RECKTENWALD, Lieutenant, Operations Supervisor of the Detention Center with the Davie County Sheriff's Department, in her individual and official capacity; TERESA MORGAN, a/k/a Teresa M. Godbey, Sergeant, Jailer-Detention Officer with the Davie County Sheriff's Department, in her individual and official capacity; CRYSTAL COOK MEADOWS, Sergeant, Detention Officer with the Davie County Sheriff's Department, in her individual and official capacity; MATTHEW TRAVIS BOGER, Jailer-Detention Officer with the Davie County Sheriff's Department, in his individual and official capacity; JOHN OR JANE DOES 1-5, Jailers-Detention Officers with the Davie County Sheriff's Department, in their individual and official capacities; WESTERN SURETY COMPANY; ANDREW C. STOKES, Sheriff of Davie County, in his individual and official capacity,

        Defendants - Appellees.

----------------------------------------

AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION; AMERICAN CIVIL LIBERTIES UNION OF SOUTH CAROLINA; RIGHTS BEHIND BARS; RODERICK & SOLANGE MACARTHUR JUSTICE CENTER,

        Amici Supporting Appellant.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  N. Carlton Tilley, Jr., Senior District Judge.  (1:18-cv-00741-NCT-JLW)

---

2

Argued: September 19, 2023                                Decided: December 8, 2023

---

Before GREGORY and HEYTENS, Circuit Judges, and Deborah L. BOARDMAN, United States District Judge for the Maryland District, sitting by designation.

---

Reversed and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Heytens and Judge Boardman joined.

---

**ARGUED:** William Ellis Boyle, WARD & SMITH, PA, Raleigh, North Carolina, for Appellant. James R. Morgan, Jr., WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Rudolf Garcia-Gallont, WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellees.

---

3

GREGORY, Circuit Judge:

On the morning of August 24, 2016, Victoria Short[1] attempted suicide while in custody at the Davie County Detention Center ("Jail"). She died of her injuries about two weeks later. Her husband, Charles Short, individually and as the administrator of her estate, filed suit, bringing claims under 42 U.S.C. § 1983 against the Davie County Sheriff's Department, which is responsible for the care and custody of inmates in the Jail, and several employees of the Sheriff's Department individually. He also alleged violations of state law. Defendant-Appellees moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The district court dismissed all of Mr. Short's claims, including the claim under the Fourteenth Amendment for the detention officer's deliberate indifference to Ms. Short's risk of suicide, which is at issue in this appeal. Because the district court erred in concluding that the Complaint failed to state a claim, we reverse.

I.

On July 6, 2016, Victoria Short attempted suicide for the first time.[2] A deputy of the Davie County Sheriff's Department, who had been dispatched to her home, called EMS and had Ms. Short transported to Forsyth County Hospital for emergency mental health treatment. At the hospital, it was determined that Ms. Short had taken between 50 and 100

---

[1] We refer to Victoria Short as "Ms. Short" to distinguish her from her husband, Appellant Charles Short, whom we refer to as "Mr. Short."

[2] Unless stated otherwise, all facts are taken from the Amended Complaint.

4

prescription medicine pills during her suicide attempt. She remained in the hospital for four days to receive in-patient treatment.

About six weeks later, on August 22, 2016, at approximately 11:45 p.m., two officers in the Sheriff's Department responded to another call at the Shorts' home—this time because of a domestic disturbance between Ms. Short and her husband. Ms. Short told one of the officers that "she used a syringe found in the kitchen to 'shoot up on Xanax pills,'" that "she was having withdraw[al]s from shooting up," and that "she had not shot up since yesterday." J.A. 145. The deputy's report also noted that Ms. Short was "extremely upset and appeared to be on some type of narcotic as she was shaking uncontrollably, twitching from the neck area, and had needle marks all down both her arms." *Id.*

The deputies took both Mr. and Ms. Short into custody and transported them to the Jail. On the way to the Jail, Ms. Short's brother and Mr. Short told the deputies that Ms. Short was suicidal and had recently attempted suicide. Ms. Short appeared before a magistrate upon arriving at the Jail, and he placed her on a forty-eight-hour domestic hold. Mr. Short was released from custody after approximately four or five hours.

The Amended Complaint alleges that, at 12:09 a.m. on August 23 (approximately half an hour after the deputies responded to the Shorts' home), Ms. Short was examined by licensed practical nurse Linda Barnes.[3] Following the examination, Nurse Barnes placed

---

[3] After Defendant-Appellees moved for judgment on the pleadings but before the district court ruled on the motion, the parties conducted and completed discovery, which revealed that Nurse Barnes had in fact examined Ms. Short at 12:09 p.m., twelve hours (Continued)

Ms. Short on the Jail's withdrawal protocol, which included detoxing medications and heightened monitoring by Jail staff. However, Jail staff did not comply with the protocol's monitoring requirements, which included checking on the inmate every fifteen minutes. Instead, a member of the Jail staff conducted walk-by observations, usually lasting only a few seconds, 30 minutes or more apart.

Also in the early morning hours of August 23, Sergeant Teresa Morgan completed two forms evaluating Ms. Short's health. On the first form, some of the questions are addressed to the inmate (e.g., "Are you diabetic?"), while others are addressed to the officer (e.g., "Is the inmate . . ."). J.A. 221–22. Both Ms. Short and Sergeant Morgan signed the form. J.A. 223. One question, directed at the inmate, asks whether the inmate ever considered or attempted suicide. The response states "yes," and the comment "last month" was added. J.A. 221. In response to the question of whether she uses drugs and, if so, how much, Ms. Short responded "yes" and "what ever can [sic] get my hands on." J.A. 222. With respect to alcohol, she commented that she uses alcohol "every other day." *Id.* Another question, directed at the officer, asks, "does the inmate appear to be under the

___

later than what was alleged in the Complaint. In their Answer to the Amended Complaint, the medical defendants, who included Nurse Barnes, denied the relevant allegation of the Amended Complaint but without explanation. J.A. 278. The Law Enforcement Defendants admitted the allegation that the examination occurred at 12:09 a.m. in their Answer, even though it has subsequently been revealed that this is incorrect. J.A. 46. Because this case comes to us on appeal from a Federal Rule of Civil Procedure 12(c) dismissal, facts revealed during summary judgment are not properly part of the record. *See Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). Whether Nurse Barnes examined Ms. Short at 12:09 a.m. or 12:09 p.m. is not outcome determinative here, and we rely on the allegation that this examination occurred at 12:09 a.m. for purposes of this appeal. On summary judgment however, the facts revealed during discovery will be properly before the court.

influence of, or withdrawing from drugs or alcohol?  If yes explain." *Id.*  The response states "yes" and "drugs." *Id.*

The second form required Ms. Short to check "yes" or "no" in response to several questions relating to her mental health.  J.A. 225.  She checked "yes" for questions 5 and 6:  "Do you currently feel like you have to talk or move more slowly than you usually do?" and "Have there currently been a few weeks when you felt like you were useless or sinful?" *Id.*  She checked "no" for "have you ever been in a hospital for emotional or mental health problems?" (question 8), but in the adjacent comment box she wrote, "when I tried to com[mit] suicide stayed in hospital [sic] 4 days." *Id.*  The second section of the form provides a space for the officer's comments and impressions, including a line to indicate whether the detainee is under the influence of alcohol or drugs, but nothing is marked in this section. *Id.*  The form then states that the detainee "should be referred for further mental health evaluation" if they answered "yes" to question 7, "yes" to question 8, or "yes" to at least two of questions 1 to 6. *Id.*  Based on these instructions, Ms. Short should have been referred.  The next line of the form, which provides space for an officer to indicate whether the detainee was referred, is blank, but Sergeant Morgan signed on the appropriate signature line at the bottom of the page. *Id.*  At the conclusion of these evaluation processes, in the early morning hours of August 23, Ms. Short was placed in an isolation cell.

Detention Officer Sarah Cook arrived for her shift at around 6:45 a.m. on August 24.  She overheard Officer Michael Brannock tell another detention officer that he had responded to the Shorts' home in July following Ms. Short's first suicide attempt.  Based

7

on what she overheard, Officer Cook realized that Ms. Short was at risk of attempting suicide and, upon learning that Ms. Short was in an isolation cell and was not being observed as often as the Jail policy mandated, asked why Ms. Short was in isolation. She was told that Lieutenant Dana Recktenwald had ordered that Ms. Short be placed in isolation because Ms. Short was "being mouthy." Ms. Short remained in isolation.

At 9:30 a.m. on August 24, Detention Officer Matthew Boger conducted a walk-by observation in the female isolation unit to check on Ms. Short. He observed her sitting on her bed in the cell. According to the complaint, the CCTV footage shows that Ms. Short attempted suicide by hanging herself from the cell door with a bedsheet between 9:49 and 9:56 a.m. During his next walk-by observation at 10:10 a.m., Officer Boger discovered Ms. Short hanging from the door. She was rushed to Wake Forest Baptist Medical Center and died on September 7, about two weeks later. She never regained consciousness.

Davie County Detention Center Policy ("Policy" or "Prison Policy") Section 4.10 provides that inmates "identified as a suicide risk" must be "place[d] in a populated cell, never . . . in a single cell" and prison guards must check on inmates every ten to fifteen minutes and log their rounds. J.A. 227; *see also* J.A. 228 ("It is important to begin 10–15 minute checks on a suicidal inmate, even if he or she is in a multi-occupant cell. This must be documented."). For inmates identified as a suicide risk, the Policy also instructs officers to "remove all articles that the inmate has that may be used to commit suicide" and requires evaluation by a mental health professional. J.A. 168. The Policy also provides that all detention officers will receive "training to recognize signs that an inmate may be suicidal" and provides a list of non-exclusive factors that "may indicate that an inmate is considering

8

suicide," and further instructs medical personnel and officers to "look carefully for any other indicators of potentially suicidal behavior." J.A. 227. One of the factors is "previous attempts to commit suicide." *Id.* Another is "drug or alcohol intoxication or withdrawal." J.A. 228. Under this Policy, Ms. Short should have been placed on suicide watch—she should have been in a populated cell, the bed sheet should have been removed from her cell, and prison guards should have conducted checks every 10–15 minutes.

An internal investigation, conducted by a Sheriff's Department employee, claimed that Ms. Short was placed in isolation because she had "a multitude of sores all over her body, some of which were oozing fluid. She was isolated for the safety of other inmates to avoid exposing them to a possible communicable disease." J.A. 154–55. But this rationale contradicts what Officer Cook was told the morning of August 24: that Ms. Short was in isolation because she was "being mouthy."[4] The investigation also concluded that officers and medical personnel followed all protocols—Ms. Short had displayed only "common withdrawal symptoms from narcotics and alcohol" and had no "current suicidal indicators." J.A. 161. When the Sheriff's Department finally reported Ms. Short's death

---

[4] The Amended Complaint also alleges that, "at some point on August 23," Nurse Barnes authorized that Ms. Short be moved to isolation "allegedly due to having open draining sores all over her body." J.A. 155. To reconcile this allegation with the allegation that Ms. Short was moved to isolation for "being mouthy," and because we must make all reasonable inferences in favor of the plaintiff at this stage, we assume that Nurse Barnes's authorization occurred after Ms. Short's initial assignment to an isolation cell and that the initial decision was made because Ms. Short was "being mouthy." This inference in no way contradicts the Amended Complaint because the allegation that Nurse Barnes's authorization occurred "at some point" is entirely consistent with its occurrence later in time than Ms. Short's initial assignment to an isolation cell.

to state regulators five months later, the state's independent investigation refuted the findings of this internal investigation.

## II.

Mr. Short, individually and in his capacity as administrator of Ms. Short's estate, sued various Sheriff's Department employees with authority over the Jail and its inmates, including Sergeant Morgan (collectively, the "Law Enforcement Defendants"), in both their official and individual capacities.[5]  The suit also named Southern Health Partners,[6] Nurse Barnes, Nurse Bailey, and Physician Assistant Manuel Maldonado as defendants (collectively, the "Medical Defendants").  Appellant alleged claims under Section 1983 for violations of Ms. Short's Fourteenth Amendment rights and related claims under state law. In March and April 2020, Appellant filed stipulations of voluntary dismissal of the Medical Defendants "based on negotiated settlement agreements with those parties."  Stipulation of Dismissal of LPN Linda Barnes, LPN Susan Desiree Bailey, & P.A. Manuel Maldonado at 2, *Short v. Hartman*, 1:18-cv-00741 (M.D.N.C. Mar. 25, 2020), ECF No. 77; Stipulation of Dismissal of Southern Health Partners, Inc. at 2, *Short v. Hartman*, 1:18-cv-00741

---

[5] Specifically, the Law Enforcement Defendants are Sheriff Andrew Stokes, the Davie County Sheriff at the time of Ms. Short's death; Sheriff J.D. Hartman, the Sheriff at the time Mr. Short sued and a deputy at the time of Ms. Short's death; Captain Cameron Sloan, Chief Jailer of the Sheriff's Department; and Lieutenant Dana Recktenwald, Sergeant Crystal Meadows, Sergeant Teresa Morgan, and Officer Matthew Boger, who were allegedly present at the Jail at various times during Ms. Short's detention.

[6] Southern Health Partners (SHP) provided medical services to inmates at the Jail. Nurse Barnes, Nurse Bailey, and PA Maldonado were employees of SHP.

(M.D.N.C. Apr. 1, 2020), ECF No. 78. Accordingly, only the Law Enforcement Defendants remain as parties to this case.

While discovery was ongoing, the Law Enforcement Defendants moved for judgment on the pleadings. Without ruling on the motion, the district court allowed the parties to continue discovery. After discovery closed, the Law Enforcement Defendants moved for summary judgment. Rather than ruling on the summary judgment motions, the district court ruled on the 17-month-old motion for judgment on the pleadings.

The district court dismissed the individual capacity claims against Lieutenant Recktenwald, Sergeant Crystal Meadows, Officer Boger, and Sergeant Morgan, reasoning that "none of them is alleged to have personally deprived Mrs. Short of her constitutional rights." *Short v. Stokes*, No. 1:18-cv-00741, 2021 WL 620933, at *7 (M.D.N.C. Feb. 17, 2021). The District Court also dismissed the individual capacity claims against Sheriff Stokes, Sheriff Hartman, and Captain Sloan because "the allegations against each of them appear to be based on a theory of *respondeat superior*, which cannot be a basis for individual liability under § 1983." *Id.* at *6. The court then dismissed the official capacity claims on the basis that there were no sufficient allegations that "any individual defendants violated Mrs. Short's constitutional rights." *Id.* at *11. Finally, it declined to exercise supplemental jurisdiction over any state law claims because no federal law claims remained. *Id.*

Appellant timely appealed, arguing that he properly alleged that Sergeant Morgan, in her individual capacity, violated Ms. Short's constitutional rights. Appellant says that, if we agree with him and reverse the district court, we ought to remand with instructions to

11

reconsider the official capacity and state law claims over which the district court declined to exercise jurisdiction.

We requested that the parties submit supplemental briefing addressing:

(1) Whether the Fourteenth Amendment claims should be evaluated under the objective test announced in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015);

(2) If *Kingsley* applies, whether this Court should remand for the court below to address, in the first instance, whether the objective test is met;

(3) This Court's recent decision in *Stevens v. Holler*, 68 F.4th 921 (4th Cir. 2023), decided after the parties' briefs were submitted.

## III.

We review *de novo* a district court's ruling on a Rule 12(c) motion for judgment on the pleadings. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In doing so, we "apply the standard for a Rule 12(b)(6) motion." *Id.* That standard requires that we accept all facts pled in the complaint as true and "draw all reasonable inferences in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12

IV.

We first address the issue raised by our request for supplemental briefing—whether *Kingsley v. Hendrickson* abrogated our prior precedent and requires us to recognize that pretrial detainees can state a claim based on a purely objective test under the Fourteenth Amendment for prison officials' deliberate indifference to excessive risks of harm to the inmate.  576 U.S. 389 (2015).  Several cases have squarely presented this Court with the opportunity to decide whether *Kingsley* applies to pretrial detainees' claims for deliberate indifference to an excessive risk of harm.  So far, though, we have not reached the issue, instead resolving each case on alternative grounds.  *See, e.g.*, *Moss v. Harwood*, 19 F.4th 614, 624 n.4 (4th Cir. 2021) ("Because Moss has expressly endorsed application of the Eighth Amendment standard—including its subjective component—to his Fourteenth Amendment claim, we have no occasion to consider that question today."); *Mays v. Sprinkle*, 992 F.3d 295, 300–01 (4th Cir. 2021) ("We need not resolve this argument as [*Kingsley*'s] standard would make no difference here because of qualified immunity.").  Leaving this question unresolved creates uncertainty in our jurisprudence and allows the issue to slip past both practitioners and courts, as happened in this case below.  More than eight years after *Kingsley*, it is time we lay this issue to rest.

A.

Before we turn to the merits of *Kingsley*'s applicability, we must assure ourselves that the issue is properly before us.  As the Supreme Court has cautioned, "[c]ourts do not, or should not, sally forth each day looking for wrongs to right."  *Greenlaw v. United States*, 554 U.S. 237, 244 (2008).  Rather, under the party presentation principle, we generally

address only the issues raised by the parties. *Id.* at 243.  However, "[c]ourts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities." *Degen v. United States*, 517 U.S. 820, 823 (1996).  This inherent power permits courts to "independently consider an issue not raised by the parties when necessary to protect important institutional interests." *United States v. Oliver*, 878 F.3d 120, 124 (4th Cir. 2017).  One such institutional interest is "a court's fundamental obligation to ascertain controlling law." *Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.*, 783 F.3d 976, 980 (4th Cir. 2015).  That is what we are doing here.

Of course, "'[j]ust because' we have the inherent authority to act 'does not mean that it is appropriate to use that power in every case.'" *Oliver*, 878 F.3d at 126 (quoting *Dietz v. Bouldin*, 579 U.S. 40, 48 (2016)).  In our adversarial system, "we rely on the parties to frame the issues for decision and assign courts the role of neutral arbiter of matters the parties present." *Greenlaw*, 554 U.S. at 243.  "Such adversary proceedings not only increase public confidence in the justice system, but they implicitly recognize that 'parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief.'" *Oliver*, 878 F.3d at 126 (quoting *Greenlaw*, 554 U.S. at 244).  "Habitual sua sponte consideration of a forfeited issue disincentivizes vigorous advocacy and thereby chips away at the foundation of our justice system." *Id.*

But we cannot sacrifice the integrity of our jurisprudence to the party presentation principle. *See Dan Ryan Builders*, 783 F.3d at 980.  For that reason, we have stated that the party presentation principle does not constrain our "fundamental obligation to ascertain

14

controlling law." *Id.* "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). The Supreme Court has long recognized that a "court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990)) (alteration in original). The question we have raised—whether *Kingsley* applies to the type of claim asserted in this case—is antecedent to our consideration of the district court's disposition of Mr. Short's claims. Accordingly, this issue is properly before us.

## B.

We now turn to whether *Kingsley* abrogates our Circuit's prior precedent and requires us to recognize that pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm.[7] Like the Second, Sixth, Seventh, and Ninth

---

[7] The Tenth Circuit has observed that "a deliberate indifference claim presupposes a subjective component." *Strain v. Regalado*, 977 F.3d 984, 992 (10th Cir. 2020). But the Supreme Court has recognized that, outside of the Eighth Amendment context, the term "deliberate indifference" is not necessarily subjective. Instead, it is "the equivalent of reckless[ness]," which is an objective standard in the civil law context, but a subjective standard in the criminal law context. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). Indeed, in the context of municipal liability, the same term is used to describe a purely objective test. *See id.* at 840 (citing *Canton v. Harris*, 489 U.S. 378, 389 (1989)). As the Sixth Circuit noted, "the *Farmer* Court adopted the subjective component of the test for (Continued)

Circuits, we find that it does. *See Gordon v. County of Orange*, 888 F.3d 1118, 1120, 1122–25 (9th Cir. 2018); *Darnell v. Pineiro*, 849 F.3d 17, 34–35 (2d Cir. 2017); *Miranda v. County of Lake*, 900 F.3d 335, 351–52 (7th Cir. 2018); *Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021).

Under our precedent, "[o]ne 'panel cannot overrule the decision of a prior panel' . . . '[a]bsent contrary law from an en banc or Supreme Court decision.'" *Carrera v. EMD Sales, Inc.*, 75 F.4th 345, 352 (2023) (quoting *Desmond v. PNGI Charles Town Gaming*, 564 F.3d 688, 691 (4th Cir. 2009) and *Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019)). Previous "panel precedent . . . is not binding if it subsequently proves untenable considering Supreme Court decisions," *Rose v. PSA Airlines*, 80 F.4th 488, 506 (4th Cir. 2023) (Heytens, J., concurring in part and dissenting in part) (internal quotation omitted), but "[w]e do not lightly presume that the law of our circuit has been overturned or rendered no longer tenable," *Carrera v. E.M.D. Sales Inc.*, 75 F.4th 345, 352 (4th Cir. 2023) (internal quotation omitted). A Supreme Court decision overrules or abrogates our prior precedent only if our precedent is "impossible to reconcile" with a subsequent Supreme Court decision. *Id.* If it is "possible for us to read our precedent harmoniously" with Supreme Court precedent, we must do so. *Id.* at 353 (internal quotation omitted). This is a high bar.

---

deliberate indifference under the Eighth Amendment based on the language and purposes of that amendment, focusing particularly on 'punishments,' and not on any intrinsic meaning of the term." *Brawner v. Scott County*, 14 F.4th 585, 595 (6th Cir. 2021). Accordingly, like the Second, Sixth, Seventh, and Ninth Circuits we retain the term "deliberate indifference" despite adopting *Kingsley*'s purely objective standard. We nonetheless acknowledge that, to the average reader, the term "deliberate indifference" suggests subjectivity, and that an alternative term such as "objective indifference" may be preferable if we were writing on a clean slate.

But here that bar has been met, and we hold, as four of our sister circuits[8] have previously, that *Kingsley* is irreconcilable with precedent requiring pretrial detainees to meet a subjective standard to succeed on claims under the Fourteenth Amendment for prison officials' deliberate indifference to excessive risks of harm to the inmate. The fact that *Kingsley* refers broadly to "challenged governmental action" and speaks of claims under the Fourteenth Amendment generally, coupled with its heavy reliance on *Bell v. Wolfish*, demonstrate that *Kingsley*'s objective standard extends not just to excessive force claims; it applies equally to deliberate indifference claims. 441 U.S. 520 (1979).

i.

Before turning to *Kingsley*, we examine the jurisprudential history leading up to our adoption of the subjective deliberate indifference standard for pretrial detainees' claims under the Fourteenth Amendment. The Supreme Court first recognized a claim for deliberate indifference to a prisoner's serious medical needs in *Estelle v. Gamble*—an Eighth Amendment case. 429 U.S. 97 (1976). The *Estelle* Court, however, did not establish a standard for evaluating those claims. Two years later, this Court extended *Estelle* from Eighth Amendment claims to Fifth and Fourteenth Amendment Due Process Clause claims, reasoning that "due process is at least as co-extensive as the guarantees of

---

[8] Notably, these four circuits all adopted *Kingsley*'s purely objective test, without considering the question en banc. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 352–53 (7th Cir. 2018); *Brawner v. Scott County*, 14 F.4th 585, 596–97 (6th Cir. 2021). They thus recognized, as we do here, that *Kingsley* mandates a departure from prior circuit precedent and eliminates the need for en banc consideration of the issue.

the [E]ighth amendment." *Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978). Like

the Supreme Court before, we did not establish a standard for evaluating those claims.

After a few years without clarification from the Supreme Court, we filled the gap

and adopted an objective test for Fourteenth Amendment claims of deliberate indifference

to serious medical needs. *See Whisenant v. Yuam*, 739 F.2d 160, 164 (4th Cir. 1984);

*Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). We drew that test from the Supreme

Court's decision in *Bell v. Wolfish*, 441 U.S. 520 (1979). In *Bell*, the Supreme Court held

that "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention

. . . the proper inquiry is whether those conditions amount to punishment of the detainee."

*Id.* at 535. The Court in *Bell* explained that whereas the Eighth Amendment only protects

post-conviction detainees from "cruel and unusual punishment," the Fourteenth

Amendment Due Process Clause protects pretrial detainees from being punished at all. *Id.*

at 535–37 & n.16. As a result, any pretrial detention conditions that "amount to

punishment" violate due process. As we read *Bell*,

> [t]o establish that a particular condition or restriction of his confinement is constitutionally impermissible "punishment," the pretrial detainee must show either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred.

*Martin*, 849 F.2d at 870 (citing *Bell*, 441 U.S. at 538–40).

Applying *Bell*, we held that deliberate indifference to serious medical needs violates

the Fourteenth Amendment even in the absence of subjective intent to punish "because no

legitimate nonpunitive goal is served by a denial or unreasonable delay in providing

medical treatment where the need for such treatment is apparent." *Id.* at 871 (citing

18

*Whisenant*, 739 F.2d at 164).  And in *Gordon v. Kidd*, we dispelled any doubt about whether that test required the plaintiff to show that the defendant knew of and consciously disregarded the health risk at issue.  971 F.3d 1087 (4th Cir. 1992).  "Stated succinctly, '[t]he key to deliberate indifference in a prison suicide case is whether the defendants knew, *or reasonably should have known*, of the detainee's suicidal tendencies.'"  *Id.* at 1094 (emphasis added) (quoting *Elliott v. Cheshire County*, 940 F.2d 7, 10–11 (1st Cir. 1991)).  *See also Hill v. Nicodemus*, 979 F.2d 987, 991–92 (4th Cir. 1992).

In 1994, the Supreme Court finally adopted a test for Eighth Amendment deliberate indifference claims in *Farmer v. Brennan*.  511 U.S. 825 (1994).  That test is subjective:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837–38.

The Eighth Amendment drove *Farmer*'s reasoning and circumscribed its holding.  After identifying "deliberate indifference" with recklessness, *Farmer* observed that there are two forms of recklessness.  Criminal recklessness is subjective, requiring conscious disregard of a risk of which the defendant is aware.  *Id.* at 836–37.  By contrast, civil recklessness is objective, encompassing action or failure to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Id.* at 836.  *Farmer* held that Eighth Amendment deliberate indifference required criminal recklessness—the subjective form—because the Eighth Amendment restricts only cruel

19

and unusual punishment, *id.* at 837, and the Court's precedents "mandate[d] inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment," *id.* at 839. Having previously "rejected a reading of the Eighth Amendment that would allow liability to be imposed on prison officials solely because of the presence of objectively inhumane prison conditions," the Court concluded that only a subjective test for Eighth Amendment deliberate indifference would respect its preexisting Eighth Amendment rules. *Id.* at 839. In sum, *Farmer* adopted a subjective test for Eighth Amendment claims on Eighth Amendment grounds.

Nevertheless, in the years that followed, a consensus emerged among the courts of appeal that *Farmer*'s subjective Eighth Amendment standard applied to Fourteenth Amendment claims. *See, e.g.*, *Upham v. Gallant*, 99-2224, 2000 WL 1425759, at *1 (1st Cir. 2000); *Caiozzo v. Koreman*, 581 F.3d 63, 66 (2d Cir. 2009); *Serafin v. City of Johnstown*, 53 F. App'x 211, 213–14 (3d Cir. 2002); *Hare v. City of Corinth*, 74 F.3d 633, 636 (5th Cir. 1996); *Polk v. Parnell*, No. 96-5711, 1997 WL 778511, at *1 (6th Cir. 1997); *Henderson v. Sheahan*, 196 F.3d 839, 844–45 (7th Cir. 1999); *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005); *Schell v. Richards*, No. 97-15743, 1997 WL 664988, at *1 (9th Cir. 1997); *Dean v. Hamblin*, No. 95-2088, 1995 WL 623650, at *2 (10th Cir. 1995); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

We, too, extended *Farmer* to Fourteenth Amendment claims, but, like several of our sister circuits, we did not provide extensive reasoning. The most satisfying justification that we can glean from our prior caselaw is that we relied on the Supreme Court's assertion in *City of Revere v. Massachusetts General Hospital* that protections for pretrial detainees

under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner." 463 U.S. 239, 244 (1983). At least with respect to deliberate indifference claims, we have consistently read this to mean that protections under the Fourteenth Amendment are the same as those under the Eighth Amendment and, consequently, should be evaluated under the same standard. *See, e.g.*, *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir. 2023) (citing *City of Revere* for this proposition and then applying the *Farmer* standard).

Our decision in *Martin v. Bowman* adopted *Farmer*'s Eighth Amendment holding and applied it to pretrial detainees. No. 94-6246, 1995 WL 82444 (4th Cir. 1995). We did this despite recognizing that (1) *Farmer* confined itself to the Eighth Amendment context, and (2) "deliberate indifference" did not have to be a subjective standard—in fact, it was, and still is, an objective standard in *Monell* claims. *Id.*; *see Farmer*, 511 U.S. at 841 (stating that it "would be hard to describe" the test for municipal liability for failure to train, which "permit[s] liability to be premised on obviousness or constructive notice, as anything but objective")).

We revisited *Farmer*'s applicability to the Fourteenth Amendment in *Ervin v. Magnum* but did not provide substantially more reasoning. No. 93-7129, 1997 WL 664606 (4th Cir. 1997). There, we wrote:

> As a practical matter . . . we do not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim. Despite the Supreme Court's suggestion that pretrial detainees may be afforded greater protection than convicted prisoners, the circuit courts have generally analyzed both situations under the same "deliberate indifference" standard.

*Id.* at *4 (citations omitted).

21

It is true that if a Fourteenth Amendment claimant is entitled to at least as much protection as an Eighth Amendment claimant, then whatever treatment violates the Eighth violates the Fourteenth. But it does not follow that treatment violates the Fourteenth only if it violates the Eighth. In *Ervin* and the cases that followed, *see Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir. 2001); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), we elided the distinction between the Eighth Amendment claims of post-conviction detainees and the Fourteenth Amendment claims of pretrial detainees.

That brings us to *Kingsley*.

## ii.

The Supreme Court's ruling in *Kingsley v. Hendrickson* upends the assumption that Fourteenth Amendment Due Process Clause claims should be treated the same as Eighth Amendment claims. In *Kingsley*, the Supreme Court held that, to state a Fourteenth Amendment Due Process Clause claim for excessive use of force, a pretrial detainee need allege only that the officer used objectively unreasonable force. *Kingsley*, 576 U.S. at 396–97. If that were all *Kingsley* did, then it would not only be "possible for us to read our [deliberate indifference] precedent harmoniously," it would be easy. *See Carrera*, 75 F.4th at 353. But *Kingsley* did more. It reiterated that a pretrial detainee may state a claim under the Fourteenth Amendment by satisfying *Bell*'s objective standard. *Kingsley*, 576 U.S. at 398 (citing *Bell*, 441 U.S. at 561). And *Kingsley* rejected our only ground for replacing the objective *Bell* test for Fourteenth Amendment deliberate indifference claims with *Farmer*'s subjective Eighth Amendment test. *See id.* at 400 (stating that because the language of the Eighth and Fourteenth Amendments differs, "the nature of the claims often differs"). For

22

those two reasons, it is "impossible to reconcile" *Kingsley* with our subjective deliberate indifference test for Fourteenth Amendment claims. *See Carrera*, 75 F.4th at 352.

*Kingsley* is clear:  The Fourteenth Amendment Due Process Clause protects pretrial detainees from "governmental action" that is not "rationally related to a legitimate nonpunitive governmental purpose" or that is "excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (quoting *Bell*, 441 U.S. at 561) (internal quotation marks omitted).  That test is "solely an objective one." *Id.* at 397.  As *Kingsley* observed, *Bell* applied that "objective standard" to a challenge to "a variety of prison conditions, including a prison's practice of double bunking"—not just to excessive force claims. *Id.*  "In doing so, [*Bell*] did not consider the prison officials' subjective beliefs about the policy." *Id.* And, notably, *Kingsley* itself likewise speaks broadly of "challenged governmental action," as opposed to only the government's use of excessive force. *Id.* at 398.  Of course, a showing of subjective intent can still help a pretrial detainee state a claim for action that "amounts to punishment," because "'punishment' can consist of actions taken with an 'expressed intent to punish.'" *Id.* (quoting *Bell*, 441 U.S. at 538).  But such a showing is not necessary.

Our subjective deliberate indifference test for pretrial detainees' Fourteenth Amendment claims is irreconcilable with the *Kingsley–Bell* objective test.  Under *Kingsley*, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.*  Under our subjective test, however, a pretrial detainee must also show that the defendant "knew of and disregarded [a] substantial risk

23

to the inmate's health or safety." *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir. 2023). The showing sufficient to satisfy *Kingsley*'s objective test is necessary but insufficient to satisfy our subjective test. It is "impossible to reconcile" our post-*Farmer* cases with *Kingsley*. *See Carrera*, 75 F.4th at 352.

Further, *Kingsley* repudiated the reasoning we followed in adopting the subjective test for deliberate indifference claims in the first place. Our precedent extended *Farmer*'s Eighth Amendment test to Fourteenth Amendment claims by dismissing the distinction between the two amendments as a distinction without a difference. *See Martin*, 1995 WL 82444, at *3; *Ervin*, 1997 WL 664606, at *4; *Grayson*, 195 F.3d at 695; *Young*, 238 F.3d at 575–76. *Kingsley* commands the opposite. "The language of the two Clauses differs, and the nature of the claims often differs." *Kingsley*, 576 U.S. at 400. Specifically, *Kingsley* directs us to be more solicitous of the Fourteenth Amendment claims of a pretrial detainee than the Eighth Amendment claims of a post-conviction detainee, for "pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Id.* In fact, when the defendant officials in *Kingsley* argued that Eighth Amendment case law supplies the Fourteenth Amendment standard, *Kingsley* rejected that maneuver out of hand for failing to respect the distinctions between the amendments. *Id.* at 400–01. Because "there is no need here, as there might be in an Eighth Amendment case, to determine when punishment is unconstitutional," the heightened, subjective Eighth Amendment deliberate indifference standard does not extend to Fourteenth Amendment cases. *Id.* For a Fourteenth Amendment claim, it is enough that the challenged action is not rationally related to a legitimate nonpunitive purpose or is excessive in relation to that purpose. *Id.* at 398.

24

Now that *Kingsley* requires us to properly distinguish Eighth Amendment claims from Fourteenth Amendment claims, our prior precedent applying a subjective deliberate indifference standard is "no longer tenable." *Carrera*, 75 F.4th at 352 (quotation omitted). We cannot harmonize *Kingsley* with our prior Fourteenth Amendment deliberate indifference precedent. The only way to respect the distinction *Kingsley* drew between the Eighth and Fourteenth Amendments is to recognize that *Kingsley*'s objective test extends to all pretrial detainee claims under the Fourteenth Amendment claims for deliberate indifference to an excessive risk of harm. We therefore conclude that *Kingsley* abrogated our prior precedent.

iii.

To persuade us that *Kingsley* does not disturb the law of our circuit, Appellees extensively quote the Tenth Circuit's decision in *Strain v. Regalado*, the most thoroughly reasoned opinion declining to apply *Kingsley*'s objective test to deliberate indifference claims. 977 F.3d 984 (10th Cir. 2020).[9] The Tenth Circuit brushed aside any conflict between *Kingsley* and that court's subjective test for Fourteenth Amendment deliberate indifference claims primarily by construing *Kingsley* narrowly: as addressing only excessive force claims, "nothing more, nothing less." *Id.* at 991. But that reading reduces *Kingsley*'s reasoned judgment to an arbitrary fiat. *Kingsley* did not decree on a whim that we must use an objective test for excessive force claims. *Kingsley* found that a pretrial detainee may state a claim for excessive force on a purely objective basis because "our

_____

[9] Three other circuits have retained the subjective test with little analysis or none at all. *See Whitney v. City of St. Louis*, 887 F.3d 857, 860 n.4 (8th Cir. 2018); *Dang ex rel. Dang. v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017); *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 n.4 (5th Cir. 2017).

precedent" (above all, *Bell*) already recognizes that a pretrial detainee may state a due process claim against "a variety of prison conditions" by an "objective standard." *Kingsley*, 576 U.S. at 397–98.  We cannot avoid the conflict between *Kingsley* and our case law by ignoring *Kingsley*'s rationale.

The Tenth Circuit also tried to cabin *Kingsley* by distinguishing the purposes of excessive force claims and deliberate indifference claims.  "The deliberate indifference cause of action does not relate to punishment," *Strain* says, "but rather safeguards a pretrial detainee's access to adequate medical care."  977 F.3d at 991.  For that reason, the Tenth Circuit reasoned, the *Kingsley–Bell* objective test for treatment that "amounts to punishment" does not govern deliberate indifference claims.  *Id.*  While it is certainly true that the deliberate indifference cause of action safeguards a detainee's right to medical care, it is not true that this cause of action does not relate to punishment.  The Supreme Court recognized an Eighth Amendment claim for deliberate indifference because the "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose"—that is, because it would amount to unjust punishment.  *Estelle*, 429 U.S. at 103–04.

In yet another attempt to harmonize *Kingsley* with a subjective test for deliberate indifference, *Strain* emphasizes that "[e]xcessive force requires an affirmative act, while deliberate indifference often stems from inaction."  *Strain*, 977 F.3d at 991.  To the Tenth Circuit, "'the *Kingsley* standard is not applicable to cases where a government official fails to act' because 'a person who unknowingly fails to act—even when such a failure is objectively unreasonable—is negligent at most.'"  *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1086 (9th Cir. 2016) (*en banc*) (Ikuta, J., dissenting)).  Yet

26

*Kingsley* and *Farmer* expressly rejected that proposition. *Kingsley*, 576 U.S. at 395–96; *Farmer*, 511 U.S. at 837. The Supreme Court has recognized that an objective test requires civil recklessness, observing that "civil law generally calls a person *reckless* who acts or (if the person has a duty to act) *fails to act* in the face of an unjustifiably high risk of harm that is either known or *so obvious that it should be known*." *Farmer*, 511 U.S. at 836–37 (emphasis added). We cannot reconcile our deliberate indifference precedents with *Kingsley* by artificially limiting *Kingsley*'s objective test to claims that require "affirmative act[s]," *Strain*, 977 F.3d at 991, on the spurious ground that deliberate indifference would collapse into negligence otherwise. Recklessness is a lower bar than intent, but a higher bar than negligence.

In short, we find *Strain*'s reasoning unpersuasive and hold that *Kingsley* is irreconcilable with our prior precedent. *Kingsley* repudiates a subjective requirement for pretrial detainees' Fourteenth Amendment claims and permits pretrial detainees to state Fourteenth Amendment claims for deliberate indifference to a serious risk of harm on the purely objective basis that the "governmental action" they challenge is not "rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (quoting *Bell*, 441 U.S. at 561) (internal quotation marks omitted).

iv.

To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the

27

defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. We take this test to be the same test our sister circuits have adopted. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 352–53 (7th Cir. 2018); *Brawner v. Scott County*, 14 F.4th 585, 596–97 (6th Cir. 2021).

The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, "objectively unreasonable," 576 U.S. at 397: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. Or as the Supreme Court put it when describing civil recklessness in *Farmer*, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836. We go no further.

To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. *See Kingsley*, 576 U.S. at

28

396; *Brawner*, 14 F.4th at 596; *Gordon*, 888 F.3d at 1125; *Miranda*, 900 F.3d at 353–54.

Negligence was not enough before, *Stevens*, 68 F.4th at 931, and it is not enough now.

V.

Having determined that the proper test for pretrial detainees' claims under the Fourteenth Amendment is an objective one, we could remand without considering anything further, because the district court improperly applied a subjective standard. But because we conclude that the allegations in the Complaint suffice to state a claim under any test—including the subjective Eighth Amendment deliberate indifference test—we additionally explain why the district court erred in granting judgment on the pleadings, and why, as a result, this case can proceed past the pleadings stage.

As explained above, the objective test is not the sole means of showing a Fourteenth Amendment violation. We have previously stated that "a pretrial detainee makes out a violation *at least* where he shows deliberate indifference to serious medical needs under cases interpreting the Eighth Amendment." *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (emphasis added). Though the Supreme Court instructed in *Kingsley* that an objective test is proper for pretrial detainees' claims under the Fourteenth Amendment, a pretrial detainee can still state a claim if they can meet the more demanding Eighth Amendment standard. In other words, satisfying the Eighth Amendment test remains sufficient, but is no longer necessary, for a pretrial detainee to state a claim for deliberate indifference to a serious medical need. Because the facts alleged in the Complaint are sufficient to satisfy even the Eighth Amendment deliberate indifference test against

29

Sergeant Morgan, we conclude that the district court erred in dismissing the Complaint for failure to state a claim, and reverse.

The deliberate indifference test "includes objective and subjective elements." *Mays*, 992 F.3d at 300. The objective element requires an objectively "serious" medical condition. *Id.* A condition is objectively serious if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). The subjective element requires that the prison official acted with deliberate indifference to inmate health or safety, meaning that the official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

In applying the deliberate indifference test, we first ask whether Ms. Short had an objectively serious medical condition. *See Mays*, 992 F.3d at 303. "A substantial risk of suicide is certainly the type of 'serious harm' that is contemplated by the first prong" of the deliberate indifference test. *Brown v. Harris*, 240 F.3d 383, 389 (4th Cir. 2001). The Complaint alleges that Ms. Short had very recently attempted suicide, was undergoing severe withdrawal, and was experiencing feelings of uselessness or sinfulness. These allegations demonstrate a substantial risk of suicide, and, by extension, satisfy the objective prong of the deliberate indifference test.

Turning to the second element, Sergeant Morgan "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178. Ms. Short conveyed all of these facts—her

recent suicide attempt, her daily drug use and consequent withdrawal, and her feelings of worthlessness—to Sergeant Morgan when Sergeant Morgan processed Ms. Short and completed two health screening forms evaluating Ms. Short's mental health. The Complaint therefore sufficiently alleges that Sergeant Morgan had actual subjective knowledge of Ms. Short's condition.

Sergeant Morgan also knew the excessive risk posed by her action or inaction. Section 4.10 of the Prison Policy clearly laid out suicide risk factors of which officers should be aware. These risk factors include "previous attempts to commit suicide," "depression," and "drug or alcohol intoxication or withdrawal." An officer's failure to act "if they demonstrably knew or had reason to know that a suicide was imminent" constitutes deliberate indifference. *Buffington v. Baltimore County*, 913 F.3d 113, 120 (4th Cir. 1990). Based on the Prison Policy, on which Sergeant Morgan had been trained, Sergeant Morgan knew that Ms. Short posed a serious suicide risk if Sergeant Morgan did not act. And Sergeant Morgan was not powerless to mitigate this risk—the Prison Policy lays out several steps Sergeant Morgan could have taken, including placing Ms. Short in a populated cell, removing items such as bedsheets with which Ms. Short could hang herself from the cell, and conducting regular checks every ten to fifteen minutes. J.A. 228. Sergeant Morgan took none of these steps.

We recently stated, in *Stevens v. Holler*, that "protocol violations" demonstrate that a defendant "knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Stevens v. Holler*, 68 F.4th 921, 932 (4th Cir. 2023) (quoting *Young v. City of Mount Rainier*, 238 F.3d

31

567, 575–76 (4th Cir. 2001)); *see also Younger v. Crowder*, 79 F.4th 373, 384 (4th Cir. 2023) (stating that failure to follow "unwritten policy" was evidence supporting jury's finding that second prong was satisfied). As in *Stevens*, the allegation that Sergeant Morgan failed to follow established protocol that unambiguously applied to the situation at hand is sufficient to satisfy the subjective prong of the deliberate indifference test. *Stevens*, 68 F.4th at 933.

Though a violation of a local policy does not by itself violate the Constitution or give rise to a § 1983 claim, it is nevertheless instructive both in determining the seriousness of the risk posed and in determining whether an officer knew of "the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178. The Jail established the Prison Policy to create a baseline of when a risk of suicide is sufficiently severe such that additional steps must be taken. These judgments can serve as a proxy for when an inmate's medical need is so "obvious that even a lay person would easily recognize" it. *See Mays*, 992 F.3d at 300. This Policy was implemented for a reason; we cannot now cast it aside as entirely irrelevant to the question of whether additional action was necessary, even though the Policy unambiguously provides that it was.

Appellees contend that Ms. Short's risk of suicide was not sufficiently imminent to require Sergeant Morgan to act in any way to mitigate the risk. Faced with a previous suicide attempt, active and severe withdrawal, and a Prison Policy that unambiguously instructs officers that in this exact situation additional steps must be taken, it seems that Appellees ask us to hold that a risk of suicide is only sufficiently imminent when a detainee expressly tells a prison official that they are planning to commit suicide at that time. But if someone were lying on the ground, gasping for air, and clutching their chest, we wouldn't

32

require them to tell the prison official "I am having a heart attack right now" before concluding that the prison official should have taken action. So too here. A very recent suicide attempt, alone or coupled with feelings of worthlessness and severe withdrawal symptoms, are sufficiently obvious indicators of suicide that a lay person could recognize them.[10] *See Scinto*, 841 F.3d at 225.

Appellees further contend that Sergeant Morgan was entitled to defer to Nurse Barnes's and Nurse Bailey's professional judgments that Ms. Short did not pose a suicide risk. In support, Appellees principally cite *Shakka v. Smith*. 71 F.3d 162 (4th Cir. 1995). There, this Court held that prison officials were not deliberately indifferent in withholding the inmate's wheelchair, where they were acting on the express instructions of a prison psychologist. *Id.* at 167. The psychologist had ordered the wheelchair "be removed temporarily for Shakka's own protection and the protection of others." *Id.*

Though the Amended Complaint in this case contains some conflicting allegations regarding why Ms. Short was placed in solitary confinement, it alleges that "being mouthy" was at least one reason. J.A. 159. At this stage in the proceedings, we must credit this version of events and construe the allegations in favor of Appellant. *Nemet Chevrolet, Ltd.*, 591 F.3d at 253 (stating that we must "draw all reasonable inferences in favor of the plaintiff"). Because this justification has nothing to do with a medical judgment, Sergeant Morgan cannot hide behind *Shakka* to justify her failure to place Ms. Short in a populated area of the prison.

---

[10] Of course, this would be a very different situation if Sergeant Morgan were not aware of Ms. Short's recent suicide attempt or her withdrawal symptoms. *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("The law cannot demand that officers be mind readers."). But the Complaint alleges that Sergeant Morgan was aware of these facts.

33

Unlike in *Shakka*, Sergeant Morgan was not acting on the express instruction of a medical provider—Appellees merely contend that Sergeant Morgan did not violate Ms. Short's constitutional rights because the nurses who examined Ms. Short did not take or order these additional steps either. But Sergeant Morgan cannot use the Medical Defendants' conduct or failure to act to shield her from liability on these facts. Holding otherwise would shield non-medical defendants from liability whenever a medical provider was at some point consulted.

This Court's decision in *Iko v. Shreve* supports this conclusion. 535 F.3d 225 (4th Cir. 2008). There, an inmate was pepper sprayed in the course of a cell extraction and transfer to a different cell. *Id.* at 231–32. As part of the cell-extraction procedure, the inmate was taken "to a nearby medical room to be examined by a nurse." *Id.* at 232. In the medical room, in the nurse's presence, the inmate collapsed. *Id.* "The officers caught him and directed him into a nearby wheelchair for transportation to the" new cell. *Id.* Neither the officers nor the nurse provided or requested any medical treatment. *Id.* The officers argued that they were not deliberately indifferent because they "were entitled to defer to the actions and medical decisions of the nurse." *Id.* at 242. This Court rejected this argument, because *Iko* did not "present a situation in which prison officials might be held liable for the actions or inactions of a medical professional. The officers face liability for *their own* decisions, made while Iko was in their charge." *Id.* This Court also stated that *Iko* was "further distinguishable from the precedent on which the officers seek to rely because it is undisputed that Iko received *no* medical treatment whatsoever. There was *no* medical opinion to which the officers could have deferred." *Id.*

34

The same is true here. Appellant seeks to hold Sergeant Morgan accountable for her own decision not to take steps to mitigate Ms. Short's risk of suicide. Further, there is no allegation that Sergeant Morgan communicated with either nurse prior to placing Ms. Short in isolation. In the absence of an allegation that Sergeant Morgan knew of and relied on a medical provider's evaluation *in the moment*, she cannot use the medical provider's inaction to justify her own post-hoc. We thus conclude that the Complaint sufficiently alleges that Sergeant Morgan was deliberately indifferent to Ms. Short's serious medical needs by failing to follow the steps outlined in the Prison Policy to mitigate Ms. Short's suicide risk.

VI.

Appellees also argue in their supplemental brief, for the first time, that Sergeant Morgan is entitled to qualified immunity because it was not "clearly established" that she could not rely on the judgment of medical professionals. This argument was not raised in Appellees' initial brief, nor has Appellant had the opportunity to address the issue before this Court. "A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (cleaned up). This principle applies to both parties, not just to the appellant. *See United States v. Legins*, 34 F.4th 304, 319 n.18 (4th Cir. 2022) (applying the principle of waiver to an argument the appellee failed to raise in its brief). Accordingly, we make only two small observations concerning the availability of qualified immunity but decline to decide whether qualified immunity is in fact available to Appellees.

35

First, under *Iko*, where officers are being held accountable "for *their own* decisions," they cannot rely on medical professionals' lack of action as a shield for liability. *Iko*, 535 F.3d at 242. Under this precedent, Sergeant Morgan may be hard pressed to explain why she was entitled to rely on Nurse Barnes's and Nurse Bailey's lack of action under "clearly established" precedent. Second, under this Court's precedent, qualified immunity is generally not available at all for deliberate indifference claims. We held in *Thorpe v. Clarke* that "when 'plaintiffs have made a showing sufficient to' demonstrate an intentional violation of the Eighth Amendment, 'they have also made a showing sufficient to overcome any claim to qualified immunity.'" 37 F.4th 926, 934 (4th Cir. 2022) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001)). Accordingly, "[B]ecause the Eighth Amendment's deliberate-indifference standard requires knowing conduct, an official who was deliberately indifferent could not also believe 'that [their] actions comported with clearly established law.'" *Pfaller Amonette*, 55 F.4th 436, 446 (4th Cir. 2022) (quoting *Thorpe*, 37 F.4th at 939). Nonetheless, we decline to decide the availability of qualified immunity in this particular case, because the issue is not properly presented.

## VII.

For the foregoing reasons, we reverse and remand the district court's dismissal of Appellant's claims against Sergeant Morgan. Additionally, because the district court dismissed Appellant's *Monell* claim and state law claims only on the basis that Appellant had not properly alleged an individual capacity claim, we reverse and remand the district court's dismissal of the *Monell* and state law claims. Finally, we recognize that the

36

Supreme Court's decision in *Kingsley* abrogated our prior precedent, which is irreconcilable with *Kingsley*'s mandate that pretrial detainees' Fourteenth Amendment claims be evaluated under the objective framework we identify in this opinion.

*REVERSED AND REMANDED*